EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nancy Serrano Picón<br><br>Peticionaria<br><br>v.<br><br>Multinational Life Insurance Company<br><br>Recurrida | Certiorari<br><br>2023 TSPR 118<br><br>212 DPR \_\_\_ |

Número del Caso: AC-2022-0069

Fecha: 29 de septiembre de 2023

Tribunal de Apelaciones:

Panel X

Abogado de la parte peticionaria:

Lcdo. Héctor F. Oliveras

Abogados de la parte recurrida:

Lcdo. Marcos O. Valls Sánchez
Lcda. Astrid M. Delgado Irizarry

Materia: Derecho de Seguros – Alcance de la cláusula de exclusión de un contrato de seguro de incapacidad que establece que la aseguradora no pagará por los beneficios cubiertos mientras el asegurado esté en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Nancy Serrano Picón<br><br>        Peticionaria<br><br>            v.<br><br>Multinational Life Insurance Company<br><br>        Recurrida | AC-2022-69 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

Este recurso nos brinda la oportunidad de resolver el alcance de una cláusula de exclusión de un contrato de seguro de incapacidad que establece que la aseguradora no pagará por los beneficios cubiertos **mientras el asegurado esté en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales.** Específicamente, debemos determinar si una persona, a la que se le impusieron restricciones a su libertad al momento de ser puesta bajo fianza y luego de haber sido sentenciada a probatoria, se encuentra bajo la custodia de las autoridades legales.

Por los fundamentos que discutiremos, adelantamos que confirmamos la determinación del Tribunal de Apelaciones, pues procedía aplicar la cláusula de exclusión antes aludida. Veamos.

I

El 21 de marzo de 2019, la Sra. Nancy Serrano Picón (señora Serrano Picón o peticionaria) presentó una demanda en contra de Multinational Life Insurance Company (Multinational o aseguradora) sobre sentencia declaratoria, incumplimiento de contrato de seguros, y daños y perjuicios. En esencia, alegó que en el 2000 adquirió una póliza de incapacidad y años más tarde comenzó a recibir los beneficios mensuales de la cubierta, los cuales fueron suspendidos por la aseguradora luego de haber sido acusada en la esfera federal en el 2017. Asimismo, adujo que, en el 2018, se declaró culpable de delito, y en el 2021 fue sentenciada a dos (2) años en probatoria y a una pena de restitución. Indicó que el proceder de Multinational estuvo basado en la alegada aplicación ilegal e incorrecta de la cláusula de exclusión de la póliza, la cual indica que la aseguradora no pagará los beneficios por incapacidad "mientras el asegurado esté en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales". Finalmente, la peticionaria argumentó que nunca ha estado encarcelada, en prisión o restringida de su libertad, por lo que la cláusula de exclusión no aplica.

Por su parte, Multinational contestó la demanda presentada en su contra. Entre sus defensas afirmativas, alegó que la señora Serrano Picón se encuentra bajo la custodia de las autoridades federales, por lo que es aplicable la cláusula de exclusión cuestionada. Asimismo,

reconvino en contra de la peticionaria para recobrar el beneficio por incapacidad que le pagó bajo los términos de la póliza.

Luego de varios trámites procesales, el 7 de julio de 2021, las partes presentaron su posición en torno a la exclusión de la póliza por la cual Multinational denegó los beneficios a la señora Serrano Picón. Así las cosas, la peticionaria presentó un *Memorando de hechos y de derecho* y la aseguradora una *Moción de sentencia sumaria*.

Tras evaluar los argumentos de las partes, el 4 de febrero de 2022, el foro primario notificó una *Sentencia parcial* en la cual declaró *ha lugar* la solicitud de sentencia sumaria. En síntesis, concluyó que la señora Serrano Picón había sido acusada y arrestada por las autoridades federales por fraude a la Administración del Seguro Social y se le impusieron restricciones a su libertad desde el momento en que fue puesta en libertad bajo fianza y luego de haber sido sentenciada a dos (2) años de libertad a prueba. El tribunal de instancia razonó que, a la luz de lo resuelto por el Tribunal Supremo de Estados Unidos en <u>Jones v. Cunningham</u>, 371 US 236 (1963), la peticionaria se encontraba bajo la custodia de las autoridades federales, por lo que aplicaba la cláusula de exclusión. Asimismo, emitió las determinaciones de hechos siguientes:

1. Serrano [Picón] adquirió la póliza de incapacidad número I12524.

2. En el mes de noviembre de 2009, Serrano [Picón] hace su primera reclamación bajo la póliza de Multinational.

3. Serrano [Picón] comienza a recibir los beneficios mensuales de su póliza el 29 de noviembre de 2009.

4. Serrano [Picón] fue arrestada y acusada por el [G]obierno federal en junio de 2017. El [G]obierno federal acusó a la demandante de malversación, robo y convertir para su uso o el de otro, dinero de la Administración de[l] Seguro Social, por haber cobrado beneficios por incapacidad a los que no tenía derecho.

5. [Serrano Picón] fue arrestada y fichada por las autoridades federales y se le expidió una fianza criminal.

6. El 27 de junio de 2017, Serrano [Picón] queda libre bajo fianza y el [G]obierno federal le impone restricciones a su libertad.

7. En el mes de junio de 2017, Multinational entra en conocimiento de la acusación de Serrano [Picón] y deniega los beneficios por incapacidad. Dicha denegación surge de la exclusión que dispone que no se pagarán beneficios por incapacidad proporcionados por la póliza "mientras el asegurado esté en la cárcel, prisión o de otra forma bajo la custodia de las autoridades legales".

8. El 23 de marzo de 2018, Serrano [Picón] llega a un acuerdo con el [G]obierno federal, declarándose culpable de malversación, robo y haber convertido para su uso o el de otro, dinero de la Administración de[l] Seguro Social, por haber cobrado beneficios por incapacidad a los que no tenía derecho, teniendo esto un valor de ciento treinta mil cuatrocientos noventa y tres dólares con veinte centavos ($130,493.20).

9. El 25 de enero de 2021, el Tribunal de Distrito Federal para el Distrito de Puerto Rico, emite una sentencia en contra de Serrano [Picón] donde le impone una pena probatoria de dos (2) años, imponiéndole condiciones de suspensión y de probatoria que debe cumplir. Asimismo, le impone la pena de restitución de los ciento treinta mil cuatrocientos noventa y tres dólares con veinte centavos ($130,493.20).

10. Serrano [Picón] ha estado en custodia de las autoridades legales, consecutivamente, desde el mes de junio de 2017.

En desacuerdo, el 22 de febrero de 2022, la señora Serrano Picón presentó una *Moción de reconsideración* que fue denegada por el Tribunal de Primera Instancia mediante *Resolución* del 15 de marzo de 2022. Aún inconforme, el 12 de abril de 2022, la peticionaria acudió ante el Tribunal de Apelaciones mediante un recurso de apelación en el que formuló el error siguiente:

> Erró el TPI al dictar Sentencia Parcial desestimando la causa de acción de la parte demandante, aquí apelante, apartándose de las disposiciones que rigen los contratos de seguro bajo las disposiciones del [C]ódigo de Seguros de Puerto Rico, y toda la jurisprudencia que le interpreta, por lo cual su Sentencia Parcial no está apoyada en el derecho aplicable.

Con el beneficio de la comparecencia de las partes, el foro apelativo intermedio emitió una *Sentencia* confirmando la determinación recurrida. En síntesis, concluyó que el lenguaje de la cláusula de exclusión de la póliza de incapacidad era claro y libre de ambigüedades, y las restricciones impuestas a la peticionaria como resultado de su convicción, constituían estar bajo la custodia de las autoridades legales.

Insatisfecha con lo resuelto, el 7 de julio de 2022, la señora Serrano Picón compareció ante nosotros mediante un escrito de apelación, el cual fue acogido como un recurso de *certiorari* y expedido por este Tribunal el 28 de octubre de 2022. En el recurso formuló el señalamiento de error siguiente:

> Erró el TPI y el Tribunal de Apelaciones al emitir sus respectivas Sentencias desestimando la causa de acción de la parte demandante-apelante,

> **apartándose <u>radicalmente</u> de la aplicación apropiada** de las disposiciones estatutarias que rigen los contratos de seguros bajo el Código de Seguros de Puerto Rico, y la abundante jurisprudencia que le interpretan, al permitir la exclusión de cubierta que dispone "**<u>mientras el asegurado esté en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales</u>**". (Énfasis y subrayado en el original). *Solicitud de apelación*, pág. 3.

El 14 de diciembre de 2022, la peticionaria presentó su alegato.[1] Mientras, Multinational presentó su alegato en oposición el 13 de enero de 2023. Así las cosas, el caso quedó sometido en los méritos para su adjudicación el 17 de enero de 2023.

Estando en posición de resolver la controversia ante nuestra consideración, procedemos a exponer el derecho aplicable.

## II

### A. El contrato de seguro

La industria de seguros en Puerto Rico goza de un alto interés público debido al rol que ocupa en la protección de los riesgos que amenazan la vida o el patrimonio de la ciudadanía. <u>W.M.M. v. Puerto Rico Christian School, Inc.</u>,

---

[1]   En síntesis, la Sra. Nancy Serrano Picón expuso lo siguiente:

> El Tribunal de Apelaciones, como el Tribunal de Primera Instancia, rechazaron analizar las controversias planteadas bajo las disposiciones estatutarias que rigen los contratos bajo el Código de Seguros de Puerto Rico, y la [j]urisprudencia que tanto este Honorable Tribunal como tribunales de otros foros analizan la controversia que ha sido planteada, específicamente la interpretación de lo que es una cláusula de exclusión de cubierta, que no está en forma alguna definida en la póliza emitida por Multinational, y sobre la cual no existe, que se conozca, precedente alguno que haya interpretado la misma, negando con ello el derecho a los beneficios por incapacidad a [la señora] Serrano [Picón].

2023 TSPR 48; San Luis Center Apts. *et al.* v. Triple-S, 208 DPR 824, 831 (2022). El negocio de seguros constituye uno de los principales soportes que permite amortiguar los giros violentos de incertidumbre propios del mercado, aminora sus efectos y propicia un crecimiento más estable de la economía. Íd., pág. 831 (citando a R.J. Reynolds v. Vega Otero, 197 DPR 699, 707 (2017)). En cuanto al ámbito individual, también goza de trascendencia, pues protege o aminora los riesgos que experimenta el ciudadano promedio, producto de las inclemencias del tiempo, accidentes y enfermedades, entre otros. San Luis Center Apts. *et al.* v. Triple-S, *supra*, pág. 832.

La industria de seguros está ampliamente regulada por la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como *Código de Seguros de Puerto Rico* (Código de Seguros), 26 LPRA sec. 101 *et seq.*, y, de manera supletoria, por las disposiciones del Código Civil. Mediante el contrato de seguro, una persona se obliga a indemnizar, pagar o proveer a otra un beneficio específico o determinable cuando se produce un suceso incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102.

**B. La interpretación del contrato de seguro**

Los términos estipulados en una póliza de seguro determinan los derechos y las obligaciones de las partes contratantes, y constituyen la ley que regirá entre ellas. S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 73-74 (2011). El Código de Seguros, *supra*, pauta la regla general

de hermenéutica que ha de dirigir la función interpretativa de los tribunales al momento de analizar las cláusulas de una póliza. Maderas Tratadas v. Sun Alliance *et al.*, 185 DPR 880, 897 (2012). En ese sentido, todo contrato de seguro deberá ser interpretado globalmente, a base del conjunto total de sus términos y condiciones, según expresados en la póliza y según hayan sido ampliados, extendidos, o modificados. Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Véase, además: W.M.M. v. Puerto Rico Christian School, Inc., *supra*; Maderas Tratadas v. Sun Alliance *et al.*, *supra*, pág. 897.

De igual manera, al examinar los términos de un contrato de seguro, los tribunales deben buscar su sentido o significado desde la óptica de una persona de inteligencia promedio interesada en adquirir la póliza. W.M.M. v. Puerto Rico Christian School, Inc., *supra*; Rivera Matos *et al*. v. Triple-S *et al*., 204 DPR 1010, 1020 (2020). Así, resulta preciso interpretar el lenguaje utilizado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. Íd. Ciertamente, el asegurado tiene derecho a confiar en la cubierta de la póliza que se le ofrece leyendo las cláusulas del contrato a la luz del sentido popular de las palabras. Echandi Otero v. Stewart Title, 174 DPR 355, 370 (2008).

Se entenderá que los términos del contrato de seguro son claros cuando su lenguaje es específico, es decir, sin que dé espacio para dudas, ambigüedades o sea susceptible a

distintas interpretaciones. <u>Rivera Matos *et al*. v. Triple-S *et al*.</u>, *supra*, pág. 1021. De este modo, si no existe ambigüedad en el contrato de seguro éste se interpretará de forma literal.

Es harto conocido que, en materia de seguros, el Código de Seguros, *supra*, constituye la fuente de interpretación por excelencia. <u>S.L.G. Ortiz-Alvarado v. Great American</u>, *supra*, págs. 73-74. Sin embargo, cuando dicho cuerpo estatutario no disponga expresamente de la regla de hermenéutica aplicable y exista ambigüedad respecto a alguna disposición de la póliza, se tendrá que recurrir en primera instancia al Código Civil o, en su defecto, a la jurisprudencia interpretativa al respecto. <u>Íd.</u>, pág. 74.

Hemos reiterado que el contrato de seguro constituye un contrato de adhesión, pues es el asegurador quien redacta de manera unilateral la póliza. <u>Íd.</u>, pág. 71. De esta forma, aquellas cláusulas dudosas o ambiguas se interpretarán liberalmente a favor del asegurado, pues la intención detrás de este principio es la protección de este último. <u>Maderas Tratadas v. Sun Alliance *et al*.</u>, *supra*, pág. 899.

## C. La cláusula de exclusión

Las cláusulas de exclusión limitan la cubierta de una póliza de seguro al exceptuar determinados eventos, riesgos o peligros. <u>Viruet *et al*. v. SLG Casiano-Reyes</u>, 194 DPR 271, 279 (2015); <u>Echandi Otero v. Stewart Title</u>, *supra*, pág. 370. Como norma general, estas cláusulas son desfavorecidas, por

lo que han de interpretarse restrictivamente en contra del asegurador. Sin embargo, "si los términos de la cláusula de exclusión son claros y aplican a una situación determinada, no podrá responsabilizarse a la aseguradora por aquellos riesgos expresamente exceptuados". Íd., pág. 371. Similar alcance de interpretación se ha puesto en práctica en los tribunales de Estados Unidos cuando éstos se han enfrentado a controversias sobre alguna cláusula de exclusión.[2]

**D. La moción de sentencia sumaria**

La sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. González Santiago v. Baxter Healthcare, 202 DPR 281, 290 (2019). No obstante, se exige como requisito fundamental, que no haya una controversia real y sustancial sobre algún hecho esencial y

---

[2]    En repetidas ocasiones hemos reconocido la utilidad de la jurisprudencia estatal y federal en el desarrollo de nuestro Derecho de Seguros. Véanse: Clark Sch. for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co., 734 F.3d 51 (1st Cir. 2013) ("If the language of an exclusion is clear, we will not construe it against the insurer."); N. Assur. Co. of Am. v. Keefe, 845 F. Supp. 2d 406 (D. Mass. 2012) ("Although it is true that ambiguities in an insurance contract must be construed in favor of an insured, it is equally true that clear and unambiguous provisions should be maintained unimpaired by loose and ill-considered interpretations."); Kaul v. State Farm Mut. Auto. Ins. Co., 2021 MT 67, 403 Mont. 387, 482 P.3d 1196; Johnson v. Equitable Fire & Marine Ins. Co., 142 Mont. 128, 381 P.2d 778 (1963) ("A court construing an insurance contract is not authorized to seize upon certain and definite covenants expressed in plain English with violent hands and distort them so as to include a risk clearly excluded by the contract."); Republic Ins. Co. v. Feidler, 178 Ariz. 528, 875 P.2d 187 (Ct. App. 1993) ("It has been stated that, when construing an exclusionary term in an insurance contract, the courts must examine the purpose of the exclusion, the public policy considerations involved, and the transaction as a whole."); Dykeman v. Mission Ins. Co., 12 Ariz. App. 432, 471 P.2d 317 (1970); Murray v. W. Pac. Ins. Co., 2 Wash. App. 985, 472 P.2d 611 (1970) ("An exclusion clause must be given a reasonable construction and must be interpreted in the light of the usual and ordinary experiences of mankind.").

pertinente, y que, como cuestión de derecho, proceda dictar sentencia. Viruet *et al.* v. SLG Casiano-Reyes, *supra*, pág. 283. De esta manera, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, debido a que lo único que resta por aplicar es el derecho a los hechos no controvertidos. Íd., págs. 283-284.

Por otro lado, sólo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, la parte promovida no puede prevalecer ante el derecho aplicable y el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 109-110 (2015). Específicamente, el tribunal no deberá emitir una sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho no proceda. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 913-914 (1994).

El sabio discernimiento es el principio rector del juzgador al dictar sentencia sumaria, pues sirve para evitar despojar a un litigante de su día en corte, violando el principio elemental del debido proceso de ley. García Rivera *et al.* v. Enríquez, 153 DPR 323, 339 (2001). Así las cosas, utilizado el mecanismo procesal correctamente, se

evitan juicios inútiles, así como los gastos de tiempo y dinero para las partes y el tribunal. Meléndez González *et al*. v. M. Cuebas, *supra*, pág. 112.

Los foros revisores se encuentran en la misma posición del tribunal de instancia al momento de revisar una moción de sentencia sumaria. Meléndez González *et al*. v. M. Cuebas, *supra*, pág. 118. Así pues, tienen el deber de examinar las mismas *de novo*. Íd. No obstante, los tribunales apelativos están limitados en cuanto a: (1) tomar en consideración evidencia que las partes no presentaron ante el foro inferior, y (2) adjudicar los hechos materiales en controversia, pues dicho proceder compete al juzgador de los hechos luego de celebrado el juicio en su fondo. Íd.

Finalmente, el estándar de revisión judicial de las sentencias adjudicadas sumariamente responde a la intención de cumplir con la regla procesal, pues independientemente del resultado de la moción, su adjudicación "tiene el efecto de establecer los hechos que están controvertidos y aquellos que no lo están". Íd., pág. 119.

### III

Como mencionamos en la relación de hechos, la señora Serrano Picón arguye que la cláusula de exclusión de la póliza de incapacidad es general, ambigua y no debe prevalecer, ya que alega que nunca ha estado en la cárcel, prisión o bajo la custodia de las autoridades. Asimismo, cuestiona la relevancia de la exclusión con el riesgo de incapacidad asumido por Multinational. Sobre el particular,

afirma que la cláusula no guarda materialidad, relevancia y relación alguna con el riesgo de incapacidad asumido y cubierto bajo la póliza suscrita.

Multinational, por su parte, sostiene que la cláusula de exclusión es clara y aplica a un evento determinado. Plantea que una persona de inteligencia promedio entendería que haber sido arrestado, estar libre bajo fianza y en probatoria, significa comúnmente estar bajo la custodia de las autoridades legales. Nos persuade su argumento.

Según se desprende del expediente ante nuestra consideración, no está en controversia que la peticionaria adquirió la póliza de incapacidad número I12524; recibió los beneficios cubiertos por el seguro por varios años; fue arrestada, fichada, acusada y sentenciada a dos (2) años de probatoria a nivel federal por malversación, robo y convertir para su uso o el de otro, dinero de la Administración del Seguro Social. Tampoco existe controversia en torno a que Multinational suspendió el pago de los beneficios por incapacidad proporcionados por la cubierta de la póliza, al ampararse en una exclusión que la exonera "mientras el asegurado esté en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales".

Específicamente, la cláusula de exclusión del contrato de seguro que nos ocupa dispone lo siguiente:

### EXCLUSIONES

No pagaremos los *beneficios por incapacidad* proporcionados por esta póliza:

> **\* mientras el *asegurado* esté en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales; ni**
>
> \* si la *incapacidad* del *asegurado* es:
>
> > - causada por un acto de guerra, declarada o no declarada;
> >
> > - resultado de que el *asegurado* esté desempeñándose en alguna ocupación ilegal o intentando cometer alguna falta grave, ni
> >
> > - por causa de un accidente en el cual el *asegurado* es convicto de manejar un vehículo mientras está intoxicado o bajo la influencia de cualquier droga no recetada por un *médico*. (Énfasis suplido).

Según expresáramos, todo contrato de seguro debe ser interpretado globalmente, a base del conjunto total de las disposiciones, términos y condiciones vigentes a la fecha que se juzgue relevante. Ello implica realizar un análisis integral de todas sus cláusulas. Como regla general, las exclusiones son desfavorecidas y deben interpretarse de manera restrictiva en contra del asegurador. No obstante, cuando sus términos son claros y aplican a una situación determinada, deben interpretarse según su significado común y no de manera rebuscada.

Al evaluar la cláusula de exclusión cuestionada por la señora Serrano Picón de forma global, integral y con particular atención al lenguaje utilizado, encontramos que la misma aplica a situaciones en las que se han tomado medidas jurídicas de naturaleza penal. Basta con hacer referencia a las palabras "cárcel" o "prisión" para llegar a tal conclusión. Ante este escenario, debemos considerar

una interpretación que no sea incompatible con la frase utilizada en la póliza, a saber, "mientras el asegurado esté en una cárcel, prisión **o de otra forma bajo la custodia de las autoridades legales**". Nos explicamos.

El uso común general del término "custodia" ha sido definido como el cuidado o control de una cosa o persona para inspección, preservación o seguridad ("the care and control of a thing or person for inspection, preservation or security."). Black's Law Dictionary, 11th ed. (2019).[3] En su acepción más particular, también se ha definido como la custodia de una persona (bajo libertad condicional o a prueba) cuya libertad es controlada por autoridad legal, pero que no está bajo control físico directo ("custody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control."). (Traducción suplida). Íd.

Por otro lado, el Tribunal Supremo de Estados Unidos ha resuelto que, además del encarcelamiento físico, existen otras formas de restricción a las libertades de una persona, a saber, libertad condicional ("parole"); libertad provisional bajo su propia responsabilidad ("released on his own recognizance"); libertad bajo fianza, entre otras. Son restricciones que no se le imponen a la ciudadanía en general y que se consideran como una forma de custodia.

---

[3] Véase, además, el diccionario de la Real Academia Española para los términos custodia y custodiar. Real Academia Española, https://dle.rae.es/custodia (última visita, 27 de junio de 2023).

Véanse, <u>JJ. of Boston Mun. Ct. v. Lyndon</u>, 466 US 294, 300-301 (1984); <u>Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara County, California</u>, 411 US 345, 351-352 (1973); <u>Jones v. Cunningham</u>, 371 US 236, 243 (1963).**4**

Evidentemente, una persona que se encuentra cumpliendo una sentencia en cárcel o prisión está restringida de su libertad y bajo la custodia de las autoridades legales. Ahora bien, para que una persona esté bajo la custodia de las autoridades legales, no necesariamente tiene que estar físicamente en la cárcel o prisión. Lo esencialmente importante es que la persona tenga, de cualquier modo, restringida o condicionada su libertad, pues de lo contrario las autoridades legales no tendrían autoridad o jurisdicción sobre su persona.

En esa misma línea, en nuestro ordenamiento jurídico, "el procedimiento de libertad a prueba ("probation") es uno bajo el cual un acusado, después de haber sido convicto o de haberse declarado culpable, puede ser dejado en libertad bajo la vigilancia de un oficial probatorio avezado mientras observa buena conducta, sujeto a que nuevamente se le ponga bajo custodia y se le encarcele". <u>Pueblo v. Vélez</u>, 76 DPR 142, 147 (1954) (citando a Orfield, *Criminal Procedure From Arrest to Appeal*, pág. 584 (1947)).

---

**4**    Hasta donde ha alcanzado nuestra búsqueda, la frase "o de otra forma bajo la custodia de las autoridades legales" no ha sido objeto de discusión en el contexto de una cláusula de exclusión en un contrato de seguro por incapacidad. No obstante, aunque la jurisprudencia citada gira en torno al recurso de *Habeas Corpus*, resulta persuasiva para nuestro análisis.

En esencia, una sentencia de probatoria o libertad a prueba constituye un beneficio, concesión o gracia que el juez concede a personas convictas de un delito, con el propósito de lograr su rehabilitación. Es pues, una forma de castigo mitigado. Pueblo v. Vélez, *supra*, pág. 148. Así, cuando una persona goza de libertad a prueba, disfruta de la vida y su libre albedrío de forma restringida o limitada al cumplimiento de las condiciones impuestas al concedérsele la gracia. Íd., pág. 149. De modo que, "[n]o puede decirse que es un[a] [persona] enteramente libre. Pesa sobre él la amenaza de la revocación de la sentencia probatoria […]". Íd.

Desde el momento en que la señora Serrano Picón fue acusada y dejada en libertad bajo fianza, se le impusieron ciertas restricciones ("pretrial supervision"), a saber:

1. no violar las leyes federales o estatales;

2. notificar cualquier cambio de dirección o teléfono;

3. comparecer al tribunal, según requerido;

4. reportarse a la oficina de probatoria federal para el [D]istrito de Puerto Rico;

5. entregar su pasaporte;

6. inhabilidad para obtener un pasaporte o documentos de viajes internacionales;

7. residir en la dirección provista al tribunal;

8. no salir de la jurisdicción de Puerto Rico sin autorización del tribunal;

9. no entrar al aeropuerto o puerto marítimo sin autorización;

10. someterse a tratamiento médico y psiquiátrico, según ordenado por la oficina de probatoria federal;

11. no poseer armas de fuego, entre otras.[5]

Posteriormente, la peticionaria se declaró culpable luego de alcanzar un acuerdo con el Gobierno federal. Así las cosas, fue sentenciada a dos (2) años en probatoria y a una pena de restitución. En consecuencia, se le sujetó a las condiciones post sentencia siguientes:

1. no cometer otros delitos;

2. no poseer sustancias controladas de manera ilegal;

3. reportarse a su oficial probatorio;

4. no salir de la jurisdicción de Puerto Rico sin autorización;

5. no poseer armas de fuego;

6. residir en el lugar aprobado por el oficial probatorio;

7. proveer información financiera al oficial probatorio;

8. someterse a tratamiento médico, según ordenado por el oficial probatorio;

9. someterse a registros de su persona, propiedad, vivienda, entre otros, que sean requeridos por el oficial probatorio, entre otras restricciones.[6]

A la luz de todo lo anterior, no podemos apoyar el razonamiento amplio de la señora Serrano Picón cuando afirma que no se le puede considerar como una persona bajo la

---

[5]     Véase *Order Setting Conditions of Release*, Apéndice del *certiorari*, págs. 157-159.

[6]     Véase *Judgment in a Criminal Case*, Apéndice del *certiorari*, págs. 169-174.

custodia de las autoridades legales sólo por el hecho de que no estuvo encarcelada o en confinamiento físico. Al interpretar las palabras de la póliza en su más corriente y usual sentido, atendiendo al uso general y popular de las voces, nos resulta más razonable sostener que, desde la óptica de una persona normal de inteligencia promedio, la imposición de restricciones a la libertad u otras medidas de seguridad, tales como, estar en libertad bajo fianza o ser sentenciado a probatoria, constituye estar bajo la custodia de las autoridades legales.

En consecuencia, resolvemos que Multinational actuó correctamente al suspender los beneficios por incapacidad que pagaba a la peticionaria, toda vez que las restricciones impuestas por el Gobierno federal sobre su persona son suficientes para mantenerla bajo la custodia de las autoridades legales. Así pues, a diferencia de lo que plantea la señora Serrano Picón, la interpretación de los foros inferiores para disponer del caso fue correcta. Resolver de otra manera representaría llegar a un resultado absurdo e incongruente, lo cual ha de ser rechazado vehementemente por este Tribunal. En definitiva, la cláusula de exclusión cuestionada es clara y específica en cuanto al riesgo no cubierto.

## IV

Por los fundamentos antes expresados, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones el 6 de junio de 2022, la cual confirmó a su vez la *Sentencia parcial*

dictada por el foro primario el 3 de febrero de 2022. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Se dictará Sentencia en conformidad.


                                    ROBERTO FELIBERTI CINTRÓN
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Nancy Serrano Picón<br><br>    Peticionaria<br><br>        v.<br><br>Multinational Life Insurance Company<br><br>    Recurrida | AC-2022-69 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico a 29 de septiembre de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones el 6 de junio de 2022, la cual confirmó a su vez la *Sentencia parcial* dictada por el foro primario el 3 de febrero de 2022. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García disiente y emite las expresiones siguientes, a las cuales se une el Juez Asociado señor Estrella Martínez:

El precedente que hoy sienta una Mayoría de este Tribunal se aleja innecesariamente del principio hermenéutico que exige la interpretación restrictiva de las cláusulas de exclusión. Véase, *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 279 (2015). En la faena de darle sentido a las palabras de una cláusula de exclusión, no debemos extenderles a estas una acepción tan abarcadora que tenga como segura consecuencia el relevar a una aseguradora de su responsabilidad contractual.

De este modo, al confrontarnos con una exclusión so pretexto de que la persona se encuentra "bajo la *custodia* de las autoridades legales", debemos interpretar las palabras conforme al uso común y general que estas reciben del ciudadano promedio.

*Rivera Matos v. ELA*, 204 DPR 1010, 1020 (2020). Para ello, encontramos que el propio diccionario de la Real Academia Española destaca entre las acepciones de la palabra *custodiar* el acto de "vigilar a alguien, **generalmente a un detenido, para evitar que escape**". "Custodiar", Diccionario de la Lengua Española, 2022, https://dle.rae.es/custodiar?m=form (última visita, 11 de julio de 2023). (Negrillas suplidas).

Nótese, la evidente conexión del concepto de custodiar con la restricción física de una persona. Por otra parte, conceptos como **supervisar o vigilar** denotan con mayor precisión lo que es una actividad que involucra la observación de una persona, sin tener un control físico sobre ella. Así, la definición de vigilar se constituye en el acto de **"observar algo o a alguien atenta y cuidadosamente"**. "Vigilar", Diccionario de la Lengua Española, 2022, https://dle.rae.es/vigilar?m=form (última visita, 11 de julio de 2023). (Negrillas suplidas).

Por ello, sostengo que la mejor interpretación de la palabra **custodia**, en el contexto de una cláusula de exclusión —distinto al contexto penal sustantivo— es aquella que resulte cónsona con la tenencia física de una persona y no en un régimen de supervisión o vigilancia que solo implique que la persona deba observar ciertas condiciones, mantener al día a las autoridades de los cambios en sus circunstancias y satisfacer aquellos requisitos para el cumplimiento efectivo de una pena.

Por estos motivos, hubiese impartido una interpretación directa al concepto de "custodia de las autoridades legales", sin abrir la puerta a un espectro amplio de posibilidades con la consecuencia de que una aseguradora soslaye su compromiso pactado. Así las cosas, revocaría las determinaciones recurridas.

El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente, a la cual se une el Juez Asociado señor Rivera García. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente. La Jueza Presidenta Oronoz Rodríguez no interviene.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Nancy Serrano Picón<br><br>Peticionaria<br><br>v.<br><br>Multinational Life<br>Insurance Company<br><br>Recurrida | AC-2022-0069 | <u>Certiorari</u> |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une el Juez Asociado Señor RIVERA GARCÍA.

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

> [A]l interpretarse la póliza, debe hacerse conforme a su propósito, o sea, ofrecer protección al asegurado. **Por esto, no se favorecerán interpretaciones sutiles que le permitan a la aseguradora evadir su responsabilidad.**[1]

Precisamente, contrario a lo que ha sido fomentado en las leyes y nuestra jurisprudencia en el ámbito de los seguros, hoy una Mayoría de este Tribunal hace uso de una interpretación sutil del significado de una frase contenida en una cláusula de exclusión para permitir que una aseguradora evada su responsabilidad. Ante ello, **disiento.**

Particularmente, discrepo de la interpretación hilvanada en la <u>Opinión</u> mayoritaria de la frase "o de otra

---

[1] (Negrilla Suplida). <u>Coop. Ahorro y Créd. Oriental v. S.L.G.</u>, 158 DPR 714, 723 (2003).

forma bajo custodia de las autoridades legales" por ser contraria a las firmes normas de hermenéutica en el campo del Derecho de Seguros respecto a la delimitación restrictiva del alcance de una cláusula de exclusión. En esta ocasión, el criterio mayoritario le otorga un contenido en extremo amplio a favor de la aseguradora que se aleja de forma impermisible del entendido cotidiano del ciudadano promedio sobre lo que significa estar bajo custodia, de lo que dispone nuestro ordenamiento penal a esos efectos y los propósitos del contrato de seguros por incapacidad.

Por el contrario, considero que esta controversia exigía que este Tribunal realizara una interpretación restrictiva de la cláusula de exclusión y que, al precisar su contenido bajo los principios que rigen en el Derecho de Seguros, concluyéramos que estar en libertad bajo fianza o en probatoria no es equivalente a estar bajo custodia de las autoridades.

A continuación, expongo las bases fácticas y legales que orientan mi disenso.

**I**

La Sra. Nancy Serrano Picón (señora Serrano Picón o Peticionaria) suscribió una póliza de seguro por incapacidad con Multinational Life Insurance Company (Multinational o Aseguradora) en el año 2000 que le proveería pagos mensuales en caso de incapacidad. En el contrato de seguro, Multinational insertó una cláusula de

exclusión que le liberaba de su responsabilidad si la persona asegurada se encontraba en prisión, bajo arresto o **de otra forma bajo custodia de las autoridades**.

En el 2009, tras la debida evaluación y declaración de incapacidad efectuada por la Aseguradora, la Peticionaria comenzó a recibir los beneficios de su póliza de incapacidad. Sin embargo, en el 2017, Multinational detuvo los pagos mensuales a la señora Serrano Picón. Ello, al señalar que le era de aplicación la cláusula de exclusión aludida toda vez que había sido detenida, liberada bajo fianza y, posteriormente, sentenciada a cumplir dos (2) años en probatoria por la corte federal. Para la Aseguradora, la situación legal de la señora Serrano Picón era constitutiva de estar bajo la custodia de las autoridades.

En respuesta a este proceder, la Peticionaria presentó una Demanda ante el Tribunal de Primera Instancia. Allí alegó que la Aseguradora había dejado de pagar los beneficios de la póliza sin justificación jurídica alguna. En esa línea, señaló que la cláusula de exclusión en controversia no le era oponible por ser ambigua y carecer de una definición sobre qué implica estar "o de otra forma bajo custodia de las autoridades legales". Argumentó que la frase aludida se prestaba para distintas interpretaciones y que la Aseguradora se valía de una interpretación acomodaticia para detenerle los pagos.

Por su parte, Multinational contestó la Demanda y, como parte de sus alegaciones responsivas, adujo que la Peticionaria fue arrestada, fichada y **puesta en libertad** bajo fianza por las autoridades federales en el mes de junio de 2017. Señaló que la señora Serrano Picón fue sentenciada a dos (2) años en libertad bajo probatoria tras efectuar una alegación de culpabilidad. Para la Aseguradora, ambos aspectos eran indicativos de que esta se encontraba "bajo custodia de las autoridades legales", razón por la cual aplicó la cláusula de exclusión y detuvo los pagos. Más adelante, Multinational presentó una Moción de sentencia sumaria mediante la cual se reiteró en su contención.

Tras la correspondiente oposición, el foro primario emitió una Sentencia parcial en la que decretó la desestimación de la reclamación de la Peticionaria, determinación que fue confirmada por el Tribunal de Apelaciones. Para ello, ambos foros coligieron con la postura de Multinational en cuanto a que estar en libertad bajo fianza y en libertad bajo probatoria es equivalente a estar bajo custodia de las autoridades para propósitos de la cláusula de exclusión. Ello, fundamentado en lo resuelto por el Tribunal Supremo federal en Jones v. Cunningham, infra, el cual establece que estar bajo la modalidad de libertad condicional es equivalente a estar bajo custodia para efectos de reconocer la protección constitucional federal del habeas corpus. Basado en ese precedente, los foros recurridos extrapolaron ese razonamiento sobre las

garantías individuales en la esfera penal al campo del Derecho de Seguros y lo adecuaron al lenguaje de la exclusión de la póliza para concluir que esta le era de aplicación a la Peticionaria.

Inconforme, la señora Serrano Picón acudió ante este Tribunal y su recurso fue expedido. En su Alegato, argumentó que, al interpretar de forma amplia la frase "o de otro modo bajo custodia de las autoridades legales", los foros recurridos se apartaron de las normas de hermenéutica en el área del Derecho de Seguros que exigen que las cláusulas de exclusión en una póliza se interpreten de forma restrictiva a favor de la persona asegurada. Por su parte, la Aseguradora insistió en que la cláusula de exclusión es diáfana en proscribir que no tiene la obligación de ofrecer cubierta cuando la persona asegurada está bajo la custodia de las autoridades y defendió la interpretación realizada por los tribunales recurridos.

Trabada así la controversia, una Mayoría de este Tribunal confirma lo resuelto por los foros recurridos. De paso, sienta un precedente, a mi juicio errado, mediante el cual establece que, para propósitos de interpretar una cláusula de exclusión, estar en libertad bajo fianza o en libertad por probatoria equivale a estar bajo la custodia de las autoridades legales.

Adelanto que el análisis efectuado por este Tribunal se aparta de las firmes normas de hermenéutica que debieron regir en la resolución de esta controversia. Ello, ya que,

ante la ausencia de una definición en el contrato de seguro respecto a qué significa "o de otra forma bajo custodia de las autoridades legales", una Mayoría de este Tribunal recurre a una interpretación expansiva de esta para justificar la suspensión de los beneficios por incapacidad que la Aseguradora venía obligada a pagarle a la Peticionaria.

En cambio, considero que la correcta disposición de este recurso requería una construcción restrictiva de la frase aludida, de conformidad con los fundamentos jurídicos que orientan mi postura.

**A.**

Este Tribunal ha sido consecuente en reconocer que, debido al importante rol que desempeña el mercado de seguros en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos, la industria de seguros está investida de alto interés público. San Luis Center Apts. et al. v. Triple S, 208 DPR 824, 831 (2022); Rivera Matos et al. v. Triple S et al., 204 DPR 1010, 1019 (2020); R.J. Reynolds v. Vega Otero, 197 DPR 699, 706 (2017). Producto de lo anterior, la industria de seguros está extensamente reglamentada mediante el Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, 26 LPRA sec. 101 et seq. (Código de Seguros).

El seguro se define como un "contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al

producirse un suceso incierto previsto en el mismo". Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. A su vez, la póliza es donde se consignan los términos que regirán el contrato de seguro. Íd., sec. 1125. Existen distintas clases de contratos de seguros, siendo uno de estos **el seguro por incapacidad física provee protección económica ante la pérdida de ingresos causada por una lesión o enfermedad que afecte la capacidad para trabajar del asegurado.** Coop. Ahorro y Créd. Oriental v. S.L.G., 158 DPR 714, 724 (2003). Véase, Art. 4.030 del Código de Seguros, 26 LPRA sec. 403. Como vemos, al igual que en sus otras modalidades, el propósito principal de este seguro es indemnizar y proteger al asegurado transfiriendo el riesgo a la aseguradora de ocurrir el evento especificado en el contrato. R.J. Reynolds v. Vega Otero, supra, pág. 707; Integrand Assurance v. CODECO et al., 185 DPR 146, 160 (2012).

Por otro lado, en cuanto a las normas de interpretación de las cláusulas de una póliza de seguro, el Código de Seguros dispone que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y conforme se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de [e]sta". Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125. Por ello, en ausencia de ambigüedad, el

contenido de la póliza de seguro es la ley entre las partes. R.J. Reynolds v. Vega Otero, supra, pág. 708.

Ahora bien, los términos del contrato de seguros son prístinos únicamente **"cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación"**. (Negrilla suplida). Íd., (citando a S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372, 387 (2009)). Dicho de otro modo, los términos de las pólizas de seguro "deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces". Molina v. Plaza Acuática, 166 DPR 260, 267 (2005) (citando a Morales Garay v. Roldán Coss, 110 DPR 701, 706 (1981)). En ese sentido, al examinar los términos consignados en el contrato de seguro, los tribunales venimos obligados a "considerar los vocablos utilizados a base de su acepción cotidiana como lo haría un ciudadano de inteligencia promedio interesado en obtener una póliza de seguro". Maderas Tratadas v. Sun Alliance et al., 185 DPR 880, 898 (2012); Quiñones López v. Manzano Pozas, 141 DPR 139, 155 (1996).

Lo anterior cobra especial importancia dado que el contrato de seguro es uno de adhesión. S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 71 (2011). En consecuencia, sus disposiciones deben ser interpretadas

liberalmente a favor del asegurado. San Luis Center Apartments et al. v. Triple S Propiedad et al., supra; Rivera Matos et al. v. Triple S et al., supra, pág. 1021; Maderas Tratadas v. Sun Alliance et al., supra; S.L.G. Francis-Acevedo v. SIMED, supra. Entiéndase, al interpretar las cláusulas en un contrato de seguro, estamos compelidos a hacerlo de forma liberal a favor del asegurado con el objetivo de sostener la cubierta por vía de una interpretación razonable. W.M.M. y otros v. Puerto Rico Christian School, Inc. y otros, 2023 TSPR 48, 211 DPR ____, (Opinión disidente del Juez Asociado Señor Estrella Martínez) (haciendo referencia a López v. Atlantic Southern Ins. Co., 158 DPR 562, 568 (2003)). En definitiva, al momento de interpretar los términos de una póliza, cualquier duda debe resolverse a favor del asegurado en aras de que se cumpla "con su designio intrínseco, es decir, proveer protección al asegurado". Maderas Tratadas v. Sun Alliance et al., supra, pág 898.

Similar razonamiento hemos aplicado a las cláusulas de exclusión insertadas en el contrato de seguro. Veamos.

**B**

Las cláusulas de exclusión operan para limitar la cubierta establecida en el contrato de seguros. Monteagudo Pérez v. E.L.A., 172 DPR 12, 21 (2007). De esta forma, con la inserción de una cláusula de exclusión, un asegurador limita los riesgos por los cuales habrá de responder en caso de activarse su deber de proveer cubierta. R. Cruz,

Derecho de Seguros, San Juan, Publicaciones JTS, 1999, págs. 167-168.

Como norma general, este tipo de cláusulas son desfavorecidas toda vez que limitan la cubierta del asegurado, por lo que deben interpretarse restrictivamente contra el asegurador. Rivera Matos et al. v. Triple S et al., supra, pág. 1021; Maderas Tratadas v. Sun Alliance et al., supra, pág. 899; S.L.G. Francis-Acevedo v. SIMED, supra, pág. 388. Es decir, debido a que el efecto de una cláusula de exclusión es aminorar la responsabilidad del asegurador, siendo el contrato de seguro uno de adhesión, las cláusulas de exclusión deben interpretarse restrictivamente en su contra. R. Cruz, op cit., pág. 168. **En consecuencia, para que se sostenga su validez, la cláusula de exclusión debe ser clara, específica, libre de ambigüedades y detallar la situación o el riesgo que se excluye de forma tal que el asegurado esté informado sobre los eventos particulares que quedarán fuera de la cubierta.** W.M.M. y otros v. Puerto Rico Christian School, Inc. y otros, supra, (Opinión disidente del Juez Asociado Señor Estrella Martínez) (haciendo referencia a Maderas Tratadas v. Sun Alliance et al., supra, pág. 899). De esta forma, "resguarda[mos] la esencia propia del seguro, que no es otra cosa que la de ofrecer la mayor protección al asegurado". Rivera Matos et al. v. Triple S et al., supra, pág. 1021. Por lo tanto, si una cláusula de exclusión es ambigua o su contenido es susceptible a diversas

interpretaciones, se impone una delimitación restrictiva del alcance de las cláusulas de exclusión en las pólizas de seguro. En esa labor, toda duda tendrá que ser resuelta de manera que se cumpla con el propósito de la póliza. Lo anterior no opera en un vacío toda vez que, siendo el asegurador quien redacta la póliza de seguro y sus exclusiones conforme a sus propios intereses sin la intervención directa del asegurado, este tiene la obligación de hacer clara su intención al establecer de manera diáfana los riesgos por los que viene obligado a responder y los que no. Véase, Domínguez v. GA Life, 157 DPR 690, 700 (2002); Meléndez Piñero v. Levitt & Sons of P.R., 129 DPR 521, 547 (1991).

Expuesto el marco normativo que rige los contornos de este disenso, procedo a discutir los fundamentos por los cuales estimo que el criterio mayoritario se apartó de esos lineamientos.

## II

De entrada, es menester contextualizar ciertos aspectos que considero importantes para la correcta adjudicación de esta controversia. No hay dudas con respecto a que la señora Serrano Picón adquirió una póliza de seguro de incapacidad en el año 2000. Tampoco se cuestiona que la Peticionaria sufre de una condición, según certificada por Multinational, que la hace elegible a recibir los beneficios del seguro por incapacidad expedido por la Aseguradora. De hecho, esta los recibió

ininterrumpidamente desde el año 2009 hasta el año 2017. A su vez, no hay controversia en cuanto a que la señora Serrano Picón fue arrestada, **puesta en libertad** bajo fianza y, posteriormente, sentenciada a dos (2) años en libertad bajo probatoria.

En lo que sí persiste controversia es con respecto al alcance y el significado que las partes le otorgan al contenido de la cláusula de exclusión que habilita el cese del pago de beneficios por incapacidad **"mientras el asegurado esté en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales[…]"**.[2]

Por un lado, Multinational sostiene que tal cláusula es clara y libre de ambigüedades en cuanto a su aplicabilidad a la situación particular de la Peticionaria. Por su parte, la señora Serrano Picón consecuentemente ha argumentado no estar bajo custodia, sino bajo la supervisión de las autoridades legales. Por lo tanto, plantea que la exclusión no le aplica y que colegir con la postura de la Aseguradora implica un desdoblamiento de los lineamientos jurisprudenciales sobre interpretación de cláusulas en un contrato de seguros.

Tras analizar el alcance de la disposición, un sector mayoritario de este Tribunal concluye que la cláusula de exclusión cuestionada es "clara y específica en cuanto al

---

[2]Apéndice [del certiorari], pág. 147.

riesgo no cubierto".[3] Acto seguido, establece que estar en libertad bajo fianza o en probatoria es equivalente a estar "o de otra forma bajo custodia de las autoridades legales". Lo anterior, a pesar de tener que incurrir a interpretaciones rebuscadas que se alejan de lo que una persona promedio entendería sobre qué implica estar bajo la custodia de las autoridades. **No puedo avalar tal razonamiento.**

En primer lugar, consigno que la frase "o de otra forma bajo la custodia de las autoridades legales" insertada en la cláusula de exclusión aludida no es clara puesto que no queda meridianamente establecido en qué contexto específico el riesgo quedará excluido. Al respecto, nótese que no hay algo en el contrato de seguro que establezca cómo definir las circunstancias que activarán la exclusión. Por otro lado, también es ambigua por ser demasiado general y susceptible a una diversidad de interpretaciones. En consecuencia, sostengo que estamos frente a un lenguaje impreciso sobre el alcance de lo que constituye estar "o de otra forma bajo custodia de las autoridades legales".

Ante esa realidad y de conformidad con el Derecho antes expuesto, nuestro deber era delimitar el alcance de esta cláusula restrictivamente en contra del asegurador y liberalmente a favor de la persona asegurada con el objetivo de sostener la cubierta vía una interpretación razonable

---

[3]<u>Opinión</u> mayoritaria, pág. 19.

sobre lo que significa estar "o de otra forma bajo custodia". Ello, entendiendo este término en su corriente y usual significado sin atender demasiado al rigor gramatical y sí el uso general y popular de las voces. En esa faena, venimos llamados a darle contenido a la frase aludida bajo la óptica de cómo lo interpretaría una persona de inteligencia promedio interesada en obtener una póliza de seguro. Debido a ello, como regla general no favoreceremos interpretaciones sutiles que le permitan a una aseguradora evadir su responsabilidad.

Consecuentemente, al realizar este ejercicio hermenéutico era forzoso hilvanar una definición de "custodia" en su sentido usual. Al así hacerlo notamos que este concepto tiene que ver con "el cuidado o control de una cosa o persona para inspección, preservación o seguridad".[4] De igual forma, este abarca "la detención de

---

[4]Black's Law Dictionary, 11th ed. (2009).

Destáquese que en la Opinión mayoritaria se hace referencia a que tal diccionario también define "custodia" en una acepción "más particular" como la custodia de una persona (bajo libertad condicional o a prueba) cuya libertad es controlada por alguna autoridad legal, pero que no está bajo control físico directo. Opinión mayoritaria, pág. 15.

**Sin embargo, esa definición aparece bajo el acápite de "custodia constructiva"** (constructive custody), concepto que ha sido elaborado a partir de lo resuelto en Jones v. Cunningham, 371 US 236 (1963) y su progenie en el contexto de reconocer más derechos a la garantía constitucional al habeas corpus en el ámbito penal. **Nótese que, al recurrir a esta definición descontextualizada, el criterio mayoritario se aparta de buscar el significado de los conceptos desde la óptica de un ciudadano de inteligencia promedio interesado en adquirir una póliza de seguro.**

una persona en virtud de un proceso legal o de una autoridad legal".[5] Como vemos, la "custodia" implica "[g]uardar algo con cuidado y vigilancia" o el acto de "[v]igilar a alguien, generalmente a un detenido, para evitar que se escape".[6] **Préstese atención a que, en su acepción usual, "custodia" implica la detención física y la restricción de la libertad de la persona.** Desde mi punto de vista, ese sentido usual del concepto conforme al uso común y general que le daría un ciudadano común debió constituir el marco de referencia al analizar el alcance de la cláusula de exclusión.

Asimismo, mi postura encuentra apoyo en varias disposiciones de nuestro ordenamiento penal. De hecho, al examinar ciertas disposiciones del Código Penal, notamos que la custodia se refiere a la restricción física de la persona por parte de los oficiales del orden público.[7] Por su parte, las Reglas de Procedimiento Criminal distinguen cuando una persona está en "custodia" de las autoridades de aquella que no tiene esa restricción física por estar en libertad bajo alguna de sus distintas modalidades.[8]

---

[5]Íd.

[6]Diccionario de la Real Academia Española, 2022, https://dle.rae.es/custodiar#BmRl1wf (última visita, 29 de septiembre de 2023).

[7]Véase, Arts. 161 y 163 del Código Penal de 2012, 33 LPRA secs. 5227 y 5229.

[8]Véase, Reglas 24(b), 55, 66, 85, 164 y 165 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, Reglas 24(b), 55, 66, 85, 164 y 165.

De otro lado, en este punto es necesario exponer los fundamentos por los cuales considero que los casos citados por la Opinión mayoritaria no debieron ser considerados como fuentes persuasivas para avalar la contención de la Aseguradora. Me explico.

En Pueblo v. Vélez, 76 DPR 142 (1954), este Tribunal se enfrentó a la interrogante de si una persona sentenciada a libertad a prueba tenía derecho a la apelación. La contestación unánime fue en la afirmativa. Adviértase que fue dentro de ese contexto que el Tribunal, citando al tratadista Orfield, expuso que:

> El procedimiento de libertad a prueba (probation) es uno bajo el cual un acusado, después de haber sido convicto o de haberse declarado culpable, puede ser dejado en libertad **bajo la vigilancia** de un oficial probatorio avezado mientras observa buena conducta, sujeto a que **nuevamente se le ponga bajo custodia** y se le encarcele. (Énfasis y subrayado suplido). Pueblo v. Vélez, supra, pág. 147.

Nótese el uso del vocablo "bajo vigilancia" para referirse a la libertad a prueba. Contrástese ello con la frase "nuevamente se le ponga bajo custodia" para referirse a la probabilidad de que, de violentar alguna condición, la persona sea nuevamente encarcelada, es decir, puesta bajo custodia de las autoridades. Por lo tanto, del caso precitado se desprende la dicotomía entre "estar bajo vigilancia" y estar "bajo custodia de las autoridades". En ese sentido, sostengo que este precedente confirma mi postura de que, para efectos de interpretar una cláusula

de exclusión que no es precisa, concluir que estar en probatoria es equivalente a estar bajo custodia de las autoridades legales es una interpretación en extremo amplia que se aparta de la línea jurisprudencialmente establecida.

A su vez, en Jones v. Cunningham, 371 US 236 (1963), el Tribunal Supremo federal se cuestionó si un prisionero que fue puesto en libertad condicional estaba "bajo custodia" para efectos de otorgar jurisdicción a tal corte. La contestación fue que sí y, consecuentemente, se reconoció que mediante la interposición de un habeas corpus se podía cuestionar si su sentencia había contravenido la Constitución federal. Como vemos, ese pronunciamiento se efectuó en el contexto del Derecho Penal para ampliar las garantías constitucionales a las personas privadas de su libertad en aras de propiciar que tuvieran acceso al vehículo procesal del habeas corpus en el ámbito federal. Es decir, fue una interpretación abarcadora para reconocer un derecho constitucional. Por lo tanto, no puedo avalar que tal precedente hoy se invoque para negar derechos en el contexto del Derecho de Seguros cuando las normas de hermenéutica apuntan hacia interpretaciones restrictivas con el objetivo de sostener la cubierta en casos en los que surjan dudas con respecto a la aplicabilidad de una cláusula de exclusión.

Finalmente, al interpretar de forma expansiva la cláusula de exclusión una mayoría de este Tribunal pasa por alto lo que es, seguramente, el propósito fundamental

detrás de esta cláusula: evitar el riesgo de que una persona asegurada reciba los beneficios de la póliza por incapacidad cuando el Estado se hace cargo de su subsistencia al tenerla "bajo custodia". Sin embargo, cuando una persona está en libertad bajo probatoria el Estado no está obligado a hacerse cargo de su subsistencia porque evidentemente no la tiene bajo su custodia.

Por tanto, sostengo que la definición expansiva de hoy adopta este Tribunal desvirtúa el objetivo de la propia cláusula de exclusión. Además, coloca en un estado de indefensión a la persona asegurada toda vez que atenta contra la esencia del seguro por incapacidad, la cual es proveer una fuente de ingresos para la subsistencia del asegurado por razón de no estar apta para laborar. De paso, le otorga un salvoconducto a la aseguradora para evadir su responsabilidad mediante una interpretación sutil que derrota el propósito del contrato de seguro por incapacidad.

En definitiva, reafirmo que la interpretación más cónsona con nuestros lineamientos jurisprudenciales y el propósito de la cláusula de exclusión obligaba a concluir que la señora Serrano Picón no está bajo la custodia de las autoridades. Más bien, está en libertad sujeta a un programa de supervisión federal que, si bien le impone el deber de cumplir con ciertas condiciones y satisfacer los requisitos de su probatoria, la mantienen en libertad y fuera de la

custodia de las autoridades para propósitos de darle contenido a la frase insertada en la cláusula de exclusión.

Así las cosas, recalco que, de conformidad con nuestra firme norma hermenéutica, en lugar de una interpretación tan amplia debimos haber pautado una visión restrictiva del alcance de la cláusula de exclusión. Toda vez que la definición abarcadora y refinada que hoy adopta la mayoría de este Tribunal sobre qué constituye estar bajo custodia de las autoridades, en el contexto de interpretar una cláusula de exclusión, se aleja del entendido que normalmente un ciudadano de inteligencia promedio le brindaría a tal lenguaje, **disiento**.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nancy Serrano Picón

    Peticionaria

       v.                     AC-2022-0069     *Certiorari*

Multinational Life Insurance
Company

    Recurrida

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

Por entender que, en lo relacionado a la causa de epígrafe, no es de aplicación lo dispuesto en cierta cláusula de exclusión contenida en determinada póliza por incapacidad que Multinational Life Insurance Company expidió a favor de la señora Nancy Serrano Picón, respetuosamente disentimos del curso de acción seguido por una mayoría de este Tribunal en el presente caso.

Y es que, contrario a lo señalado por mis compañeros y compañera de estrado, estar **"bajo la custodia de las autoridades legales"**, según dispuesto en la mencionada cláusula de exclusión, -- para fines de la protección que brinda la póliza por incapacidad

expedida a favor de la señora Serrano Picón --, no debe interpretarse como que incluye aquellos escenarios en los cuales una persona se encuentra bajo libertad a prueba. Nos explicamos.

I.

Los hechos medulares que dan margen al presente litigio, los cuales se resumen con particular precisión en la *Opinión* que hoy emite este Tribunal, no están en controversia. En síntesis, en el año 2000 la señora Nancy Serrano Picón (en adelante, "señora Serrano Picón") adquirió una póliza por incapacidad con Multinational Life Insurance Company (en adelante, "Multinational Life Insurance"). Unos años después, la señora Serrano Picón se incapacitó, por lo que comenzó a recibir los beneficios de la mencionada cubierta. Simultáneamente, ésta recibía los beneficios por incapacidad del Seguro Social estadounidense.

Así las cosas, en el año 2017, la señora Serrano Picón fue acusada a nivel federal por cobrar beneficios por incapacidad del Seguro Social a los que no tenía derecho. Meses más tarde, ésta llegó a un acuerdo con el gobierno federal mediante el cual se declaró culpable de las conductas imputadas. Consecuentemente, se le sentenció a libertad a prueba por dos (2) años y a una pena de restitución de $130,493.20.

Al conocer sobre la acusación de la señora Serrano Picón, Multinational Life Insurance detuvo los beneficios de la referida póliza por incapacidad. Esto, pues el contrato

entre las partes contenía una cláusula de exclusión que establecía que no se compensaría por los beneficios acordados "mientras el asegurado [o la asegurada] est[uviese] en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales".[1]

En desacuerdo, la señora Serrano Picón presentó, ante el Tribunal de Primera Instancia, una *Demanda* en contra de Multinational Life Insurance por incumplimiento de contrato y daños y perjuicios, acción que dio inicio al pleito ante nos. En esencia, en el referido documento esta última argumentó que nunca había estado encarcelada o tenido su libertad restringida, por lo que no era de aplicación la cláusula de exclusión invocada.

Por su parte, y en oposición, Multinational Life Insurance alegó que la señora Serrano Picón estuvo, y aún se encontraba, bajo la custodia de las autoridades federales. En consecuencia, adujo que la compañía estaba exenta de compensar los referidos beneficios.

En extrema síntesis, celebrados los procesos judiciales de rigor, tanto el Tribunal de Primera Instancia, como el Tribunal de Apelaciones, favorecieron la posición de Multinational Life Insurance. En particular, ambos foros concluyeron que la libertad a prueba implicaba estar bajo custodia del Estado, por lo que era de aplicación la cláusula de exclusión incluida en la referida póliza de beneficios por incapacidad.

---

[1] Apéndice del recurso de *Apelación*, pág. 147.

Inconforme aún, la señora Serrano Picón acudió ante este Tribunal mediante un recurso de *Apelación*. Éste fue expedido el 28 de octubre de 2022 como un *certiorari*, por ser ese el recurso adecuado. A la solicitud de la señora Serrano Picón, oportunamente, Multinational Life Insurance se opuso.

Así pues, examinados los argumentos de ambas partes, una mayoría de esta Curia determina hoy que, para fines de la cláusula de exclusión en cuestión, una persona no tiene que estar físicamente en la cárcel o prisión para encontrarse bajo custodia de las autoridades legales. Mas bien, lo determinante, según la *Opinión*, es que la persona tenga restringida o condicionada, de cualquier forma, su libertad.

Como previamente adelantamos, ese análisis no nos convence. Ello, principalmente, porque pasa por alto el verdadero alcance del término **"bajo la custodia de las autoridades legales"**. Veamos.

II.

A.

Como es sabido, la Ley Núm. 77 de 19 de junio de 1957, también conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, en su Art. 1.020, *infra*, define el contrato de seguro como aquel mediante el cual "una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102. Sobre este particular, hemos sentenciado que el propósito de dichos contratos es proveer protección a la parte asegurada.

*Quiñones López v. Manzano Pozas*, 141 DPR 139, 154-55 (1996); *Barreras v. Santana*, 87 DPR 227, 235 (1863); *Marín v. American Int´ Ins. Co. Of P.R.*, 137 DPR 356, 362 (1994).

Además, sabido es que estos acuerdos, -- incluyendo las llamadas pólizas por incapacidad --, se consideran contratos de adhesión. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 386 (2009); *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 723 (2003); *S.L.G. Ortiz-Alvarado v. Great American*, 182 DPR 48, 71 (2011). Ello es así, puesto que "el convenio de seguro, las exclusiones, y las condiciones" son redactadas íntegramente por la parte aseguradora, "sin que el asegurado haya tenido la oportunidad de negociar el contenido". *S.L.G. Ortiz-Alvarado v. Great American*, *supra*, pág. 71.

Consecuentemente, conforme a las normas de hermenéutica, las cláusulas que forman parte de los contratos de adhesión deben interpretarse en sentido desfavorable para la parte que las redacta, -- entiéndase, la aseguradora --, y en favor de quien se ve obligada a aceptar su contenido, -- la parte asegurada --. Art. 1248, Código Civil de Puerto Rico, 31 LPRA sec. 9802. Véase, *Con. Tit. Acquamarina et al. v. Triple-S*, 210 DPR 344, 358 (2022); *San Luis Center Apts. et al. v. Triple-S*, 208 DPR 824, 833 (2022). De igual forma, y en cuanto a la hermenéutica aplicable a las pólizas como las aquí en cuestión, cuando un contrato de seguros es susceptible de dos interpretaciones, hemos sido enfáticos en que se favorecerá la que beneficie a la parte asegurada. *Barreras v. Santana*, *supra*, 231; *León Ortiz v. Comisión*

*Industrial*, 101 DPR 781, 787 (1973); *Molina v. Plaza Acuática*, 166 DPR 260, 272 (2005).

**Por otra parte, algunos contratos de seguros contienen lo que hemos identificado como cláusulas de exclusión.** *Natal Cruz v. Santiago Negrón*, 188 DPR 564, 583 (2013). Véase, *Monteagudo Pérez v. E.L.A.*, 172 DPR 12, 21 (2007); *S.L.G. Francis-Acevedo v. SIMED*, *supra*, pág. 388. **En esencia, las cláusulas de exclusión son aquellas disposiciones que tienen "el propósito de limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros."** (Énfasis suplido). *Monteagudo Pérez v. E.L.A.*, *supra*, pág. 21. **Ahora bien, dichas cláusulas generalmente "son desfavorecidas y [en caso de dudas] se interpretan restrictivamente en contra de la aseguradora para que se cumpla el propósito principal de los seguros, esto es, proteger al asegurado".** (Énfasis suplido). *W.M.M. v. P.F.M. et al. v. Colegio et al.*, 2023 TSPR 48, 211 DPR ___ (2023); *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1021 (2020); *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 279 (2015). **Tal es el caso de autos.**

### B.

En lo que a la causa de epígrafe se refiere, la póliza de beneficios por incapacidad objeto del presente litigio contiene una cláusula de exclusión que establece que el asegurador no responderá cuando la o el asegurado esté "en una cárcel, prisión o de otra forma **bajo la custodia de las**

**autoridades legales"**. Dicha cláusula contractual ha generado dudas en cuanto a su alcance. La póliza de incapacidad a la que hemos hecho referencia guarda silencio sobre el particular.

Tomando en consideración lo antes expresado, entendemos pertinente analizar brevemente, como parte de la exposición del derecho, a modo de ejemplo, y por analogía,[2] algunos beneficios por incapacidad que se financian con fondos públicos, y que tienen terminología similar a la aquí en controversia. Hacemos la salvedad de que dichos beneficios son distintos a los acordados por las partes del presente litigio. Ello, principalmente, por razón de que estos últimos se originan de un contrato entre partes privadas. Sin embargo, nos parece útil hacer referencia a los mismos para conocer los efectos de una condena criminal -- junto con su debida pena -- en la elegibilidad de la persona beneficiaria.

En ese sentido, en Puerto Rico, la Ley Núm. 139 del 26 de junio de 1968, también conocida como la Ley de Beneficios por Incapacidad Temporal, 11 LPRA sec. 201 *et seq.*,[3] en su Sección 3, *infra*, dispone que una persona no es elegible a

---

[2] La analogía se trata de un "canon de construcción que se utiliza cuando existe una insuficiencia comunicativa o un vacío normativo insuperables". J. M. Farinacci Fernós, *Hermenéutica Puertorriqueña: Cánones de Interpretación Jurídica*, San Juan, Editorial InterJuris, (2019), pág. 173. Como nos explica el profesor Farinacci Fernós, esta herramienta nos permite "importar un contenido comunicativo y sobre todo normativo de la forma más compatible con la disposición legal [o contractual, añadimos nosotros] que sufre de alguna de estas insuficiencias". *Íd.*

[3] El referido estatuto se promulgó con la finalidad de ofrecer a los trabajadores y trabajadoras protección contra la pérdida de salarios en caso de incapacidad que no esté relacionada con el empleo. Véase, *Feliciano Martes v. Sheraton*, 182 DPR 368, págs. 388-392 (2011).

tales prestaciones en cualquier periodo de incapacidad durante el cual se encuentre, entre otros, encarcelada o confinada. 11 LPRA sec. 203 (g)(7). **Conforme a ello, bien podríamos concluir que la libertad a prueba no se considera una forma de custodia o reclusión por el Estado que prive del beneficio otorgado por la incapacidad, por ésta no estar encarcelada o confinada.**

Recordemos que, según la Real Academia Española, el término encarcelar significa "meter a alguien en la cárcel".[4] Por otro lado, confinar se define como "encerrar o recluir algo o a alguien en un lugar determinado o dentro de unos límites".[5]

A su vez, y en otro escenario que por analogía estudiamos, la Ley Núm. 2-2011, también conocida como el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII, Art. 1 *et seq.*, hizo extensivas, mediante su Art. 43, *infra*, las disposiciones de la Ley Núm. 45 de 18 de abril de 1935, conocida como la Ley de Compensaciones por Accidentes del Trabajo,[6] a los miembros de la población correccional. 3 LPRA Ap. XVIII, Art. 43. Ello, mientras éstos realicen labores o

---

[4] Diccionario de la lengua española, https://dle.rae.es/encarcelar?m=form (última visita, 27 de septiembre de 2023).

[5] Diccionario de la lengua española, https://dle.rae.es/confinar?m=form (última visita, 27 de septiembre de 2023).

[6] Dicha ley tiene el objetivo de proveer al trabajador o trabajadora ciertas protecciones y beneficios en el contexto de accidentes ocurridos en "el escenario y/o lugar de empleo". Guzmán y otros v. E.L.A., 156 DPR 693, págs. 727-28 (2002). De nuestro análisis, no encontramos que el mencionado estatuto explique lo que ocurre cuando la persona beneficiaria -- entiéndase, el trabajador o la trabajadora -- es convicta mientras recibe tales beneficios.

proyectos bajo el referido Departamento o bajo el Programa de Empresas, Adiestramiento, Trabajo y Cooperativas. *Íd.*

En lo pertinente a nuestro análisis, el mencionado artículo dispone que todo pago por concepto de compensación por incapacidad parcial o total permanente -- en virtud de la mencionada Ley de Compensaciones por Accidentes del Trabajo -- se expedirá a nombre de la persona recluida. *Íd.* **No obstante, dicho pago se remitirá al Departamento de Corrección y Rehabilitación mientras dure el término de reclusión de la persona beneficiaria.** *Íd.* **Veamos, nuevamente, cómo la interrupción del beneficio por incapacidad se asocia a la detención física de la persona.**

Por otra parte, y por considerarlo en extremo persuasivo para la correcta disposición de los asuntos ante nuestra consideración, por analogía también evaluamos las disposiciones relacionadas con el Seguro Social estadounidense, el cual, entre otras funciones, proporciona beneficios a personas que no pueden trabajar debido a una incapacidad prolongada.[7] En particular, se suspenden dichos beneficios cuando la persona beneficiaria se encuentra recluida, por razón de una condena por delito, en una institución penal o centro correccional. *Social Security Act*, 42 USC sec. 402 (x)(1)(A)(i). **Ahora bien, mientras está bajo libertad a prueba o en libertad condicional retiene su derecho a los referidos beneficios. Esto, salvo que viole**

_____

[7] Véase, M. L. VanDyke, *The economic impact of Social Security Reformation*, 36 J.L. & Com. 213, 213-216 (2018).

**alguna condición de los mencionados métodos de supervisión.**
42 USC sec. 402 (x)(1)(A)(v).

De igual manera, la pensión por incapacidad otorgada a personas veteranas de la milicia de los Estados Unidos también se rige por normas similares.[8] En específico, los pagos de la pensión se descontinúan desde el día sesenta y uno (61) de encarcelamiento en una institución penal federal, estatal o local, a consecuencia de una condena penal. *Veterans Education and Benefits Expansion Act of 2001*, 38 CFR sec. 3.666. Asimismo, la cuantía de una compensación por incapacidad disminuye cuando la persona veterana ha sido convicta y se encuentra recluida en una institución penal federal, estatal o local en exceso de sesenta (60) días. 38 CFR sec. 3.665(a). **Ahora bien, la persona bajo libertad a prueba o en libertad condicional tiene derecho a recibir la referida compensación, siempre que no viole alguna condición de estos acuerdos.** 38 CFR sec. 3665(n)(ii).

Como se puede apreciar, de lo anterior podemos colegir que, la suspensión de beneficios por incapacidad, -- por razón de que la persona beneficiaria ha sido sentenciada a libertad a prueba --, no es una práctica habitual. En cambio, lo verdaderamente decisivo para ello aparenta ser que la persona beneficiaria se encuentre físicamente confinada.

---

[8] Para más información sobre los beneficios por incapacidad para personas veteranas de la milicia de los Estados Unidos, véase Jennifer D. Oliva, *Son of Sam, Service-Connected Entitlements, and Disabled Veteran Prisoners*, 25 Geo. Mason L. Rev. 302, 312-317 (2018).

Es, pues, a la luz de la normativa antes expuesta que, -- desde la disidencia --, procedemos a disponer del caso que nos ocupa.

### III.

Como mencionamos anteriormente, en el presente caso, la controversia que estábamos llamados y llamadas a atender versaba sobre una cláusula de exclusión que eximía a Multinational Life Insurance de compensar por los beneficios por incapacidad acordados "mientras el asegurado [o la asegurada] est[uviese] en una cárcel, prisión o de otra forma bajo la custodia de las autoridades legales". En particular, debíamos determinar si una persona que cumple una pena de libertad a prueba se encuentra **"bajo la custodia de las autoridades legales"**, para efectos de la póliza de seguro por incapacidad en cuestión. Esto, debido a que el mencionado contrato no define o detalla el alcance de dicha frase.

Para Multinational Life Insurance, -- y así lo entendieron también el foro primario y el foro apelativo intermedio --, estar **"bajo la custodia de las autoridades legales"** no se limita a encontrarse encarcelado o encarcelada. Por el contrario, para la señora Serrano Picón, estar **"bajo la custodia de las autoridades legales"** implica estar bajo custodia física del Estado. Ambas interpretaciones son, a nuestro juicio, razonables, por lo que consideramos que dicha cláusula no es clara. En otras palabras, el referido texto sufre de ambigüedad.

Siendo ello así, bastaría con señalar que las normas de hermenéutica expuestas previamente, en lo relacionado a las cláusulas de exclusión, nos obligarían a rechazar la interpretación, amplia, que propone Multinational Life Insurance. Ello, sería suficiente para disponer del presente caso.

Ahora bien, como si lo anterior no fuera suficiente, además de las referidas normas de hermenéutica, las regulaciones sobre beneficios por incapacidad públicos antes discutidas, por analogía, abonan a nuestra conclusión. Y es que las mismas, -- entre estas, la Ley de Beneficios por Incapacidad Temporal, el Plan de Reorganización del Departamento de Corrección y Rehabilitación, el *Social Security Act* y el *Veterans Education and Benefits Expansion Act of 2001* --, evidencian que, de ordinario, este tipo de exclusiones no abarca penas distintas al encarcelamiento. Es decir, en estos casos, una medida de supervisión, -- como la libertad a prueba --, parece no ser causa suficiente para arrebatarle a una persona los beneficios por incapacidad que debidamente, mediante dinero o servicio, sufragó.

Cónsono con todo lo expuesto, no podemos avalar la *Opinión* hoy emitida por este Tribunal. A nuestro juicio, se cometió el error señalado.

IV.

Por no ser ésta la posición de una mayoría de esta Curia, respetuosamente disentimos.

Ángel Colón Pérez
Juez Asociado