Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CARLOS SUÁREZ GARCÍA, NORMA BENÍTEZ SANTIAGO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>v.<br><br>HOGAR POSADA LA VICTORIA, INC.; **AIG INSURANCE COMPANY PUERTO RICO**; UNIVERSAL INSURANCE COMPANY; JOHN DOE, FULANO DE TAL; B INSURANCE COMPANY; C INSURANCE COMPANY<br><br>Peticionaria | KLCE202301244 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. TA2022CV00066<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de enero de 2024.

**-I-**

Comparece AIG Insurance Company (AIG o la peticionaria) y solicita que revoquemos una *Resolución* emitida el 23 de marzo de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] Mediante esta, el TPI declaró No Ha Lugar a la *Solicitud de sentencia sumaria* que presentó AIG para desestimar la *Demanda* que incoaron el señor Carlos Suárez García; la señora Norma Benítez Santiago y la Sociedad Legal de Gananciales compuesta por ambos (los esposos Suárez-Benítez o los recurridos) en su contra.[2]

---

[1] Apéndice de la *Petición de certiorari*, Anejo XVI, págs. 229-239. Archivada y notificada en autos el 24 de marzo de 2023. El 10 de abril de 2023, AIG presentó una moción de reconsideración, la cual el TPI se pronunció No Ha Lugar mediante una *Resolución* emitida el 11 de octubre de 2023, archivada y notificada el 13 de octubre de 2023.

[2] *Íd.,* Anejo X, págs. 135-141.

Con el beneficio de la comparecencia de ambas partes y por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y revocamos la determinación recurrida.

**-II-**

La controversia ante nuestra consideración dimanó el 25 de enero de 2022, cuando los esposos Suárez-Benítez instaron una *Demanda* sobre daños y perjuicios contra Hogar Posada La Victoria, Inc. (Hogar); Eastern American Insurance Agency, Inc. (Eastern American); John Doe; Fulano de Tal; A Insurance Company; B Insurance Company; C Insurance Company.[3] Arguyeron que su hija, la señora Clarixa Suárez Benítez (la señora Suárez Benítez), presentaba problemas de uso y adicción a sustancias controladas, por lo que el 26 de enero de 2021 ingresó voluntariamente a un centro de rehabilitación y cuidado de personas con problemas de adicción a sustancias controladas en Toa Alta, operado por el Hogar. Manifestaron que, al próximo día, se les notificó que su hija se había evadido de las instalaciones del Hogar. Sostuvieron que el 30 de enero de 2021, se encontró muerta a su hija por una presunta sobredosis de drogas. Esgrimieron que el Hogar se comprometió a brindar vigilancia y seguridad a su hija y que su muerte fue producto de la negligencia del Hogar al no brindar vigilancia, cuidado, ni el tratamiento adecuado para evitar su evasión y su alegada recaída en el uso de sustancias controladas. Por ello, solicitaron ciento cincuenta mil dólares ($150,000.00) por concepto de daños, sufrimientos y angustias mentales.

Luego de varios trámites procesales, el 31 de julio de 2022, los esposos Suárez-Benítez peticionaron que se les permitiera enmendar la *Demanda* para incluir como parte demandada a las compañías aseguradoras que expidieron pólizas de seguro a favor

---

[3] *Íd.,* Anejo I, págs. 1-3.

del hogar, siendo estas: AIG y Universal Insurance Company (Universal).[4] El TPI declaró dicho petitorio Ha Lugar mediante *Orden* emitida el 22 de agosto de 2022.[5]

Así las cosas, el 21 de octubre de 2022, Universal presentó una *Moción de sentencia sumaria* en la que solicitó que se desestimara la acción en su contra.[6] Planteó que los hechos que provocaron la presentación de la *Demanda* se produjeron por las omisiones del Hogar en brindar sus servicios profesionales de cuidado, vigilancia y tratamiento a la señora Suárez Benítez y que la póliza de responsabilidad general comercial que emitieron no proveía cubierta por los servicios profesionales que produjeron los daños reclamados. Universal se amparó en las siguientes cláusulas de exclusión por servicios profesionales:

> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" due to the rendering of or failure to render any professional service.

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.[7]

Adicionalmente, enfatizó que estaban excluidos de cubierta los siguientes servicios rendidos o su falta de rendirlos por proveedores de salud:

> With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:

> 1. The rendering or failure to render:

> a. Medical, surgical, dental, X-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

> b. Any health or therapeutic service, treatment, advice or instruction; or

---

[4] *Íd.,* Anejo VI, pág. 12.
[5] *Íd.,* Anejo VII, pág. 20.
[6] *Íd.,* Anejo IX, págs. 24-134.
[7] *Íd.,* pág. 81.

c. Any service treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3. The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury" involved that which is described in Paragraph 1., 2. or 3.[8]

Asimismo, sustentó la desestimación a su favor con la siguiente cláusula de exclusión por lesiones de pacientes:

This insurance does not apply to "bodily injury" or "advertising injury" sustained by any person while:

1. Your patient; or

2. At premises shown in the Schedule (including while entering or leaving these premises) for the purpose of receiving health care or service.[9]

Por otro lado, el 28 de octubre de 2022, AIG radicó una *Solicitud de sentencia sumaria* a fin de que también se desestimara la acción en su contra.[10] Arguyó que la *Demanda* se promovió por las alegadas actuaciones del Hogar y que la póliza *Directors & officers not for profit: Not-for-profit individual and organization insurance policy including employment practices liability insurance* que expidieron a favor del Hogar excluía de cubierta los daños reclamados. Argumentó la desestimación a su favor, en virtud de la siguiente cláusula de exclusión de errores generales y omisiones en servicios profesionales:

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim or Claims made against the Insured alleging, arising out of, based upon, or attributable to the Organization's or an Insured's performance of or failure to perform professional services, or any act, error, or omission relating thereto.[11]

---

[8] *Íd.*, pág. 93.
[9] *Íd.*, pág. 109.
[10] *Íd.*, Anejo X, págs. 135-200.
[11] *Íd.*, pág. 170.

Específicamente, AIG se apoyó en la siguiente cláusula de exclusión:

> The Insurer shall not be liable to make any payment for Loss in connection with Claim made against an Insured:
>
> . . .
>
> h) for bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof thereto . . .[12]

En oposición a la sentencia sumaria solicitada por AIG, el 21 de noviembre de 2022, los esposos Suárez-Benítez expresaron que estaba en controversia la interpretación del texto de las cláusulas de exclusión contenidas en la póliza expedida por la peticionaria a favor del Hogar.[13] Precisaron que la póliza era ambigua en cuanto a si excluía de cubierta los daños sufridos por la señora Suárez Benítez que se transmiten por herencia o los daños propios que sufrieron los recurridos tras la muerte de su hija. Además, indicaron que la póliza no especificaba si los daños excluidos eran los físicos o emocionales. Razonaron que dichas ambigüedades se debían interpretar a su favor y que el TPI debía apreciar prueba sobre la interpretación que las partes le otorgaran a la referida póliza.

El 23 de marzo de 2023, el foro primario emitió una *Sentencia sumaria parcial* en la que declaró Ha Lugar a la solicitud de sentencia sumaria presentada por Universal. El TPI incluyó como determinación de hecho que el hogar no ejerció su deber de cuidado, vigilancia, seguridad ni brindó el tratamiento adecuado a la señora Suárez Benítez, por lo que los esposos Suárez-Benítez reclamaron daños, sufrimientos y angustias mentales. El foro recurrido concluyó que dichas acciones constituyeron servicios profesionales de acuerdo con la póliza emitida por Universal, por lo que la reclamación quedó excluida de cubierta. A saber:

> Es menester señalar que el Tribunal Supremo interpretó que el término servicios profesionales conlleva una vocación,

---

[12] *Íd.*, pág. 151.
[13] *Íd.*, Anejo XII, págs. 209-214.

llamado, ocupación o empleo que, a su vez, implica algún tipo de conocimiento, labor o destreza especializada. *Viruet et al. v. SLG Casiano-Reyes*, [194 DPR 271 (2015)]. **En el caso específico de los servicios provistos en los centros de rehabilitación dedicados al cuidado y tratamiento de personas adictas a las drogas, dichos servicios conllevan conocimientos, atenciones y destrezas particulares, lo cual implica la prestación de servicios profesionales.** Por lo anteriormente expuesto, concluimos que la póliza en cuestión contiene una exclusión de servicios, por lo que Universal no responde por los daños reclamados en la Demanda Enmendada, y por consiguiente, acogemos la Solicitud de Sentencia Sumaria Parcial, presentada por la compañía Aseguradora, Universal Insurance Company.[14] (Énfasis nuestro).

En la misma fecha, el TPI declaró No Ha Lugar a la solicitud de sentencia sumaria radicada por AIG.[15] En esencia, el tribunal de instancia apuntó que estaba en controversia si la póliza de seguro emitida por AIG excluía los daños sufridos por los esposos Suárez-Benítez o los daños sufridos por su hija. Además, el foro *a quo* estableció que la póliza era ambigua respecto a si la exclusión de lesión corporal incluía los daños emocionales sufridos por los recurridos. Por esto, el TPI determinó que las dichas ambigüedades ameritaban que las partes tuvieran su día en corte para dirimir las controversias.

Inconforme con la determinación del TPI, el 10 de abril de 2023, AIG solicitó reconsideración,[16] la cual fue denegada por el TPI por medio de una *Resolución* emitida el 11 de octubre de 2023.[17]

Inconforme, el 9 de noviembre de 2023 AIG acudió a esta Curia apelativa y nos señaló que el TPI cometió los siguientes errores:

PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL NO CONCEDER LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL SOLICITADA POR AIG CONFORME [CON] LAS EXCLUSIONES DE LA PÓLIZA DE SEGURO Y CUYOS HECHOS MATERIALES NO FUERON REFUTADOS POR LOS DEMANDANTES.

SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL LLEVAR A CABO DETERMINACIONES DE HECHOS

---

[14] *Íd.*, pág. 227.
[15] *Íd.*, Anejo XVI, págs. 229-239. Archivada y notificada en autos el 24 de marzo de 2023.
[16] *Íd.*, Anejo XVII, págs. 240-246.
[17] *Íd.*, Anejo XIX, págs. 253-260. Archivada y notificada en autos el 13 de octubre de 2023.

MATERIALES, PERO DENEGANDO LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL EN BASE DE TEORÍAS E INTERPRETACIONES ERRADAS DE LOS DEMANDANTES.

En síntesis, subrayó que resultaba claro que la póliza excluía de cubierta todo tipo de daño, sea físico o mental o cualquier otro, que surjan de una lesión física o que esté relacionado con la muerte de una persona. Estimó que extender la interpretación de las cláusulas resultaría en el menoscabo de las obligaciones contractuales.

El 8 de diciembre de 2023, los esposos Suárez-Benítez presentaron un *Memorando en oposición a que se expida el auto de certiorari*. En esencia, establecieron que no se debía expedir el recurso dado que se requiere recibir prueba testifical para analizar el motivo e interpretación en la contratación y las cláusulas contractuales.

En atención a los errores señalados, procedemos a exponer las normas jurídicas atinentes a este recurso.

-III-

-A-

El *certiorari* es un recurso extraordinario cuya característica se asienta en la sana discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391 (2021); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83 (2008). En los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019). La mencionada Regla dispone que sólo se

expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo". *800 Ponce de León v. AIJ, supra.* Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

De esta forma, de no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari.*

-B-

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales. Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36; *Bobé v. UBS Financial Services*, 198 DPR 6, (2017). Se considera un hecho material esencial aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133 (2011). En ese sentido:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. Regla 36.3 (e) de Procedimiento Civil, *supra*, R. 36.3 (e).

Es decir, este mecanismo podrá ser utilizado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y sólo resta aplicar el derecho. *Burgos López et al. v. Condado Plaza*, 193 DPR 1 (2015); *Mejías v. Carrasquillo*, 185 DPR 288 (2012). En sentido contrario, un asunto no debe ser resuelto por la vía sumaria cuando:

> (1) existen hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede. *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, *supra*.

El inciso (a) de la Regla 36.3 de Procedimiento Civil dispone que la moción de la parte promovente deberá contener:

> (1)  Una exposición breve de las alegaciones de las partes;
> (2)  los asuntos litigiosos o en controversia;
> (3)  la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4)  una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5)  las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6)  el remedio que debe ser concedido.
> Regla 36.3(a) de Procedimiento Civil, *supra,* R. 36.3(a).

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones. *Rodríguez Méndez v. Laser Eye*, 195 DPR 769 (2016).  Es preciso que la parte promovida formule, con

prueba adecuada en derecho, una posición sustentada con contradeclaraciones juradas y contradocumentos que refuten los hechos presentados por el promovente. *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud. *Oriental Bank v. Perapi et al.*, 192 DPR 7 (2014). Después de todo, la etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015).

En ese sentido, la parte promovida también tiene la obligación de cumplir con las exigencias enunciadas en las cláusulas (1), (2) y (3) del inciso (a) de la Regla 36.3 (b)(1) de Procedimiento Civil, *supra*, R. 36.3 (b)(1). Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013). Dicha tarea deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la prueba admisible en la cual se sostiene la impugnación, con cita a la página o sección pertinente. *Id.* Ahora bien, la inobservancia de las partes con la normativa pautada tiene repercusiones diferentes para cada una. Al respecto, nuestro Tribunal Supremo ha señalado que:

> Por un lado, si quien promueve la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. A contrario sensu, si la parte opositora no cumple con los requisitos, el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho. Incluso, si la parte opositora se aparta de las directrices consignadas [en la regla] el tribunal podrá no tomar en consideración su intento de impugnación de los hechos ofrecidos por el promovente. *Meléndez González et al. v. M. Cuebas*, supra.

En ese mismo orden, la jurisprudencia ha establecido que el deber de numeración no constituye un mero formalismo ni es un simple requerimiento mecánico sin sentido. Este esquema le confiere potestad a los tribunales para excluir aquellos hechos propuestos que no hayan sido enumerados adecuadamente o que no hayan sido debidamente correlacionados con la prueba. *SLG Zapata-Rivera v. J.F. Montalvo, supra.*

Ahora, si el TPI considera que no procede dictar sentencia sumaria en el caso que tiene ante sí, o que no procede conceder ese remedio en su totalidad, es obligatorio que cumpla con lo expuesto en la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, que dispone:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
>
> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

-C-

Reiteradamente nuestro Tribunal Supremo ha establecido que la materia de seguros está investida de alto interés público debido a que desempeña un trascendental rol en la protección de riesgos que amenazan la vida o el patrimonio de los ciudadanos. *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR __ (2023); *RJ Reynolds v. Vega Otero*, 197 DPR 699, 706-707 (2017); *Natal Cruz v. Santiago Negrón et al.*, 188 DPR 564, 575-576 (2013). De esta forma, la industria de seguros está extensamente regulada por el Código de

Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.,* y supletoriamente por el Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.*

El contrato de seguro es definido como aquel "mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102. De producirse el suceso incierto previsto en el contrato de seguro, su propósito radica en proteger al asegurado mediante la transferencia del riesgo que asumió la compañía aseguradora a cambio del pago de la prima. *RJ Reynolds v. Vega Otero, supra,* pág. 707; *Natal Cruz v. Santiago Negrón et al., supra,* pág. 576; *SLG Francis-Acevedo v. SIMED,* 176 DPR 372, 384 (2009).

Los términos acordados entre el asegurado y la aseguradora están contenidos en la póliza. *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880 (2012). "La póliza es el instrumento escrito en que se expresa un contrato de seguro". 26 LPRA sec. 1114 (1). Las cláusulas contenidas en la póliza constituyen la ley entre las partes. *Maderas Tratadas v. Sun Alliance et al., supra,* pág. 897; *SLG Francis-Acevedo v. SIMED, supra,* pág. 386. El Código de Seguros dispone las normas hermenéuticas que los tribunales deben atribuirles a los contratos de seguros. *RJ Reynolds v. Vega Otero, supra*; *Echandi Otero v. Stewart Title,* 174 DPR 355, 369 (2008). A saber, "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". 26 LPRA sec. 1125. Los términos esbozados en la póliza deben ser interpretados en su acepción general, sin ceñirse demasiado al rigor gramatical. *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1020 (2020); *Echandi Otero v. Stewart Title, supra,* pág. 370; *Marín v. American Int' l. Ins. Co. of PR,*

137 DPR 356, 361 (1994). "Sin embargo, si de la póliza se desprende un significado particular para determinado término, este se aplicará a tenor con lo convenido por las partes". *SLG Francis-Acevedo v. SIMED, supra,* pág. 387. A tal efecto, los tribunales deben interpretar los términos según su acepción general, como lo interpretaría una persona de inteligencia promedio que pretenda adquirir la póliza. *Íd.*; *Serrano Picón v. Multinational Life Ins., supra*; *Rivera Matos et al. v. Triple-S et al., supra*; *Maderas Tratadas v. Sun Alliance et al., supra,* pág. 898; *Quiñones López v. Manzano Posas,* 141 DPR 139, 155 (1996).

Es norma trillada que un contrato de seguro es un contrato de adhesión, debido a que la aseguradora es la parte que dicta los términos y las condiciones expuestas en la póliza. *SLG Francis-Acevedo v. SIMED, supra,* pág. 386; *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 899; En este sentido, toda ambigüedad se debe interpretar en favor del asegurado, por vía de una interpretación razonable. *Serrano Picón v. Multinational Life Ins., supra*; *SLG Francis-Acevedo v. SIMED, supra,* pág. 386; *Echandi Otero v. Stewart Title, supra.* Ahora bien, cuando las cláusulas sean claras y libres de ambigüedad, esta norma hermenéutica no aplicará y el asegurado se ceñirá por los términos de la póliza. *Maderas Tratadas v. Sun Alliance et al., supra.* Los términos de un contrato son claros cuando no dan lugar a duda, ambigüedad o divergencia en interpretaciones. *Rivera Matos et al. v. Triple-S et al., supra,* pág. 1021; *SLG Francis-Acevedo v. SIMED, supra,* pág. 387.

Además, se debe considerar si la póliza contiene cláusulas de exclusión para cerner los riesgos cubiertos por la aseguradora. *SLG Francis-Acevedo v. SIMED, supra,* pág. 388. Las cláusulas de exclusión limitan la cubierta de protección y, como consecuencia, disponen las circunstancias en las que la aseguradora no responderá por determinados eventos, riesgos o peligros. *Íd.*;

*Serrano Picón v. Multinational Life Ins., supra; Rivera Matos et al. v. Triple-S et al., supra,* pág. 1021; *Viruet et al. v. SLG Casiano-Reyes,* 194 DPR 271, 279 (2015); *Jiménez López et al. v. SIMED,* 180 DPR 1, 11 (2010); *Echandi Otero v. Stewart Title, supra.* Por ello, las cláusulas de exclusión deben interpretarse restrictivamente para que la aseguradora cumpla su propósito de proveer protección al asegurado. *Íd.*; *Marín v. American Int' l. Ins. Co. of PR, supra,* pág. 362. Así, cualquier ambigüedad en una cláusula de exclusión debe resolverse a favor del asegurado. *Íd.* **Empero, cuando los términos, las condiciones y las exclusiones contenidas en la póliza son claras, deben interpretarse literalmente, a tenor con la voluntad de las partes**. *Íd.*; *Jiménez López et al. v. SIMED, supra*; *Quiñones López v. Manzano Posas, supra,* pág. 156. **En tal eventualidad, la aseguradora no está obligada a cubrir los riesgos expresamente excluidos, aun cuando otras cláusulas de la póliza parezcan inferir lo contrario**. *Marín v. American Int' l. Ins. Co. of PR, supra*; *Quiñones v. Manzano Posas, supra.*

A la luz de las normas jurídicas antes expuestas, procedemos a resolver.

-IV-

La controversia ante nos gira en torno a la interpretación de las cláusulas de exclusiones contenidas en la póliza *Directors & officers not for profit*: *Not-for-profit individual and organization insurance policy including employment practices liability insurance* que AIG expidió a favor del Hogar. En este recurso, AIG le atribuyó al TPI la comisión de dos (2) errores. En síntesis, esgrimió que, a diferencia de lo resuelto por el TPI, se debía desestimar la demanda en su contra, a tenor con las exclusiones incluidas en la póliza de seguro que expidió.

De un examen sosegado y meticuloso de las cláusulas de exclusiones contenidas en la póliza expedida por AIG, resolvemos

que el reclamo de los esposos Suárez-Benítez quedó excluido de cubierta y, por consiguiente, se debía desestimar la demanda en contra de AIG. Ello, pues tal y como se expusiera previamente en este escrito, cuando los términos, las condiciones y las exclusiones contenidas en una póliza son claras, estas deben interpretarse literalmente, a tenor con la voluntad de las partes. En el caso de la póliza que nos ocupa, expresamente se excluye de cubierta aquellas reclamaciones hechas contra el asegurado por lesión corporal, enfermedad, o muerte de alguna persona. (The Insurer shall not be liable to make any payment for Loss in connection with Claim made against an Insured: h) for bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof[…]). Ante este claro lenguaje, debió aplicarse la norma vigente en cuanto a este tipo de contrato a los efectos de que si no existe ambigüedad en el texto éste se interpretará de forma literal. En consecuencia, tomando en cuenta los hechos particulares del caso ante nuestra consideración y la cláusula de exclusión antes transcrita, el Foro Primario debió concluir que bajo ninguna circunstancia podría responsabilizarse a la aseguradora, por lo que erró el TPI al denegar la solicitud de sentencia sumaria presentada por AIG, puesto que procedía desestimar la demanda en su contra. Véase, *Serrano Picón v. Multinational Life Insurance Company, supra.*

De esta forma, nos parece improcedente considerar si AIG cubría los daños propios o heredados por los recurridos tras la lamentable muerte de su hija. Reiteramos, la póliza contiene un lenguaje claro a los efectos de que la aseguradora no responderá por daños reclamados por lesión corporal, enfermedad, o muerte de alguna persona.

-V-

Por los fundamentos antes expresados, se expide el auto de *certiorari* y se revoca la *Resolución* del 23 de marzo de 2023. En consecuencia, se desestima la *Demanda* en contra de AIG.

Devolvemos el caso al TPI para que se continúe con los procedimientos de acuerdo con lo aquí resuelto.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pagán Ocasio disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CARLOS SUÁREZ GARCÍA, NORMA BENÍTEZ SANTIAGO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos<br><br>v.<br><br>HOGAR POSADA LA VÍCTORIA, INC**.; AIG INSURANCE COMPANY PUERTO RICO**; UNIVERSAL INSURANCE COMPANY; JOHN DOE, FULANO DE TAL; B INSURANCE COMPANY; C INSURANCE COMPANY<br><br>Peticionaria | KLCE202301244 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. TA2022CV00066<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

## VOTO DISIDENTE DEL JUEZ PAGÁN OCASIO

En San Juan, Puerto Rico, a     de enero de 2024.

> **"Dissents speak to a future age. It's not simply to say, 'My colleagues are wrong and I would do it this way.' But the greatest dissents do become court opinions and gradually over time their views become the dominant view. So that's the dissenter's hope: that they are writing not for today, but for tomorrow".** -*Justice Ruth Bader Ginsburg.*

Respetuosamente disiento de la determinación adoptada por la mayoría del Panel, por entender que existen controversias de hechos sobre si la póliza en cuestión excluye las causas de acción contenidas en la demanda. Considero que, la determinación de la mayoría de desestimar, en etapa temprana del procedimiento la reclamación en controversia, es contraria al debido proceso de ley que asiste a todas las partes que comparecen a solicitar justicia. En

Número Identificador
RES2024_____

ese sentido, permitiría que el procedimiento continúe ante el foro recurrido.

**I.**

El caso de marras tuvo su génesis el 25 de enero de 2022 cuando el matrimonio Suárez-Benítez incoó una *Demanda* sobre daños y perjuicios contra Hogar Posada La Victoria, Inc. (Hogar); Eastern American Insurance Agency, Inc. (Eastern American); John Doe; Fulano de Tal; A Insurance Company; B Insurance Company; C Insurance Company.[1] En esta, argumentó que su hija, Clarixa Suárez Benítez (Suárez Benítez), tenía problemas de uso y adicción a sustancias controladas, incluyendo marihuana, cocaína y heroína. Sostuvo que el 25 de enero de 2021, en el Tribunal de Primera Instancia, Sala de Fajardo, se ordenó que la señora Suárez Benítez ingresara voluntariamente a un centro de rehabilitación y cuidado de personas con problemas de adicción a sustancias controladas, ubicado en el Barrio Ortiz de Toa Alta, el cual era operado por el Hogar. Alegó que existió un acuerdo de pago y un compromiso de vigilancia y seguridad por parte del Hogar. Aseveró que el 26 de enero de 2021, la señora Suárez Benítez ingresó voluntariamente al centro de rehabilitación y, al siguiente día, el 27 de enero de 2021, se le notificó que su hija se evadió de las instalaciones del Hogar. Argumentó que el 30 de enero de 2021, se encontró sin vida a su hija en el Barrio Villa Juventud de Toa Alta, por una alegada sobredosis. Arguyó que la muerte de la señora Suárez Benítez se debió a la negligencia del Hogar al no ejercer el deber de vigilancia y cuidado, ni brindar el tratamiento adecuado para evitar la evasión de su hija y que, presuntamente, no recayera en el uso de sustancias controladas. Por esto, reclamó ciento cincuenta mil dólares

---

[1] *Íd.,* Anejo I, págs. 1-3.

($150,000.00) por concepto de daños, sufrimientos y angustias mentales.

Tras la parte recurrida presentar una *Moción de desistimiento parcial*, el 17 de mayo de 2022, el TPI emitió una *Sentencia parcial* en la que se desistió el pleito contra Eastern American.[2]

En igual fecha, el matrimonio Suárez-Benítez solicitó que se le anotara la rebeldía al Hogar por no contestar la demanda.[3] Mediante una *Orden* dictada y notificada el 24 de mayo de 2022, el foro primario declaró Ha Lugar la anotación de rebeldía solicitada.[4]

El 31 de julio de 2022, la parte recurrida radicó una moción para enmendar la demanda a fin de incorporar a AIG y Universal Insurance Company (Universal) como parte demandada, dado que ambas aseguradoras expidieron pólizas de seguro a favor del Hogar.[5] El 22 de agosto de 2022, el TPI emitió y notificó una *Orden* en la que declaró Ha Lugar la enmienda a la demanda.[6]

Transcurridos varios trámites procesales, el 21 de octubre de 2022, Universal radicó una *Moción de sentencia sumaria* para desestimar la reclamación en su contra.[7] Expuso que expidió una póliza de responsabilidad general comercial a favor del Hogar, con vigencia del 25 de septiembre de 2020 al 25 de septiembre de 2021. Planteó que el pleito se suscitó por las alegadas omisiones del Hogar en sus servicios profesionales al no ejercer su deber de cuidado, vigilancia y tratamiento. Argumentó que, a tenor con los términos y las condiciones de su póliza, dichos servicios profesionales del centro de rehabilitación estaban excluidos de cubierta, de modo que no respondía por los daños reclamados. En relación con la exclusión por servicios profesionales, la póliza establece:

---

[2] Archivada y notificada en autos el 18 de mayo de 2022. *Íd.,* Anejo III, págs. 7-8.
[3] *Íd.,* Anejo II, pág. 4-6.
[4] *Íd.,* Anejo IV, págs. 9.
[5] *Íd.,* Anejo VI, pág. 12.
[6] *Íd.,* Anejo VII, pág. 20.
[7] *Íd.,* Anejo IX, págs. 24-134.

> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" due to the rendering of or failure to render any professional service.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.[8]

A su vez, Universal apuntó que, en virtud del endoso sobre exclusión de los servicios brindados por los proveedores de salud, la póliza no cubría los servicios rendidos o la falta de rendirlos. A saber:

> With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:
>
> 1. The rendering of or failure to render:
>
>> a. Medical, surgical, dental, X-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;
>>
>> b. Any health or therapeutic service, treatment, advice or instruction; or
>>
>> c. Any service treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;
>
> 2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or
>
> 3. The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury" involved that which is described in Paragraph 1., 2. or 3.[9]

Por otra parte, Universal, esgrimió que la póliza no ofrecía cubierta por las lesiones sufridas por pacientes de la institución, según el siguiente endoso de exclusión de lesiones de pacientes:

> This insurance does not apply to "bodily injury", "personal injury" or "advertising injury" sustained by any person while:
>
> 1. Your patient; or

---

[8] *Íd.*, pág. 81.
[9] *Íd.*, pág. 93.

2. At premises shown in the Schedule (including while entering or leaving these premises) for the purpose of receiving health care or service.[10]

De forma similar, el 28 de octubre de 2022, AIG presentó una *Solicitud de sentencia sumaria* para que se desestimara la demanda en su contra.[11] La parte peticionaria señaló que expidió una póliza denominada *Directors & officers not for profit: Not-for-profit individual and organization insurance policy including employment practices liability insurance* a favor del Hogar, con vigencia del 30 de octubre de 2020 al 30 de octubre de 2021. Estableció que la *Demanda enmendada* se circunscribió en argüir que la muerte de Suárez Benítez se debió a las alegadas actuaciones del Hogar. Además, aseveró que la única alegación en su contra se ciñó en que su compañía aseguraba los daños reclamados, que, a su entender, no estaban cubiertos. Sustentó que la póliza no proveía cubierta por el siguiente endoso sobre exclusión de errores generales y omisiones en servicios profesionales.

> In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim or Claims made against the Insured alleging, arising out of, based upon, or attributable to the Organization's or an Insured's performance of or failure to perform professional services, or any act, error, or omission relating thereto.[12]

Asimismo, sostuvo que aplicaba la siguiente exclusión específica:

> The Insurer shall not be liable to make any payment for Loss in connection with Claim made against an Insured:
>
> . . .
>
> h) for bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof. . .[13]

El 21 de noviembre de 2022, el matrimonio Suárez-Benítez se opuso a la solicitud de sentencia sumaria solicitada por Universal.[14]

---

[10] *Íd.*, pág. 109.
[11] *Íd.*, Anejo X, págs. 135-200.
[12] *Íd.*, pág. 170.
[13] *Íd.*, pág. 151.
[14] *Íd.*, Anejo XI, págs. 201-208.

Estimó que estaba en controversia si la póliza expedida por Universal proveía cubierta por los daños reclamados, dado que el centro de rehabilitación no ofrecía servicios profesionales, ni era un proveedor de salud para que aplicara la exclusión de lesiones de pacientes. A su entender, la referida exclusión correspondía a acciones de mala práctica médico-hospitalaria.

En igual fecha, la parte recurrida radicó una *Oposición a moción de sentencia sumaria de AIG*.[15] Subrayó que el asunto en controversia versó en un examen de interpretación sobre si la póliza expedida por AIG brindaba cubierta por los daños personales sufridos tras la muerte de su hija. Manifestó que la muerte crea dos causas de acciones: los daños de la causante que se transmiten por herencia y los daños propios de los familiares. A su juicio, la póliza excluía de cubierta los daños físicos sufridos por Suárez Benítez que se transmiten por herencia, los cuales no se reclamaron en el pleito. No obstante, argumentó que la póliza era imprecisa sobre la causa de acción por razón de muerte que está excluida de cubierta, y si la exclusión se refiere a los daños físicos, emocionales o ambos. A esos efectos, puntualizó que tal ambigüedad debía interpretarse a su favor. Formuló que, en vista de la confusa redacción de las cláusulas de la póliza, el TPI debía apreciar prueba sobre dichas discrepancias en la interpretación de la aludida póliza.

El 23 de noviembre de 2022, AIG solicitó al TPI que le concediera un término para presentar una réplica a la *Oposición a moción de sentencia sumaria de AIG*.[16] En igual fecha, el tribunal *a quo* notificó que el asunto estaba sometido y bajo su estudio.[17]

Así las cosas, el 23 de marzo de 2023, el TPI dictó una *Sentencia sumaria parcial* en la que declaró Ha Lugar la sentencia

---

[15] *Íd.*, Anejo XII, págs. 209-214.
[16] *Íd.*, Anejo XIII, págs. 215-216.
[17] *Íd.*, Anejo XIV, pág. 217.

sumaria solicitada por Universal.[18] El foro primario consignó que los servicios de vigilancia y cuidado en el centro de rehabilitación constituyeron servicios profesionales, y que, al tratarse de una omisión en la prestación de servicios profesionales, los daños alegados quedaron excluidos de cubierta en la póliza expedida por Universal.

El mismo día, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la sentencia sumaria solicitada por AIG.[19] El foro recurrido formuló los siguientes hechos en controversia:

> 1. Si la póliza de seguro emitida por AIG no excluye los daños sufridos por los demandantes, Carlos Suárez y Norma Benítez.
>
> 2. Si la póliza de seguro excluye los daños de la causante, Clarixa Suárez Benítez, que se transmiten por herencia.
>
> 3. Si la compañía aseguradora no responde cuando la reclamación es por lesión corporal, enfermedad o muerte de cualquier persona.
>
> 4. Si la póliza de seguro nada expresa sobre cuál acción excluye por muerte (causa de acción por sufrimientos del causante que se transmiten a los herederos o causa de acción por daños, sufrimientos y angustias mentales sufridos por familiares).
>
> 5. Si la póliza de seguro excluye los daños físicos, emocionales o todos, ya que aparentemente no especifica qué clase de daños son los que se excluyen de la póliza.[20]

En síntesis, el TPI determinó que existe controversia de hechos sustanciales dado que la póliza de seguro expedida por AIG no es precisa respecto a si la exclusión de *bodily injury* comprendía los daños emocionales, y qué acciones por causa de muerte excluía. El foro recurrido entendió que dichas ambigüedades en la póliza ameritaban dilucidarse en un juicio plenario.

Insatisfecho con tal determinación, el 10 de abril de 2023, AIG solicitó reconsideración.[21] En respuesta, el 28 de abril de 2023, el

---

[18] Archivada y notificada en autos el 24 de marzo de 2023. *Íd.*, Anejo XV, págs. 218-228.
[19] Archivada y notificada en autos el 24 de marzo de 2023. *Íd.*, Anejo XVI, págs. 229-239.
[20] *Íd.*, págs. 233.
[21] *Íd.*, Anejo XVII, págs. 240-246.

matrimonio Suárez-Benítez presentó su oposición.[22] El 11 de octubre de 2023, el TPI denegó el petitorio solicitado por AIG.[23]

Inconforme, el 9 de noviembre de 2023, AIG presentó el recurso ante nuestra consideración y le imputó al TPI la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR:** ERRÓ EL TPI AL NO CONCEDER LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL SOLICITADA POR AIG CONFORME [CON] LAS EXCLUSIONES DE LA PÓLIZA DE SEGURO Y CUYOS HECHOS MATERIALES NO FUERON REFUTADOS POR LOS DEMANDANTES.
>
> **SEGUNDO SEÑALAMIENTO DE ERROR:** ERRÓ EL TPI AL LLEVAR A CABO DETERMINACIONES DE HECHOS MATERIALES, PERO DENEGANDO LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL EN BASE DE TEORÍAS E INTERPRETACIONES ERRADAS DE LOS DEMANDANTES.

Tras un estudio objetivo, sereno y cuidadoso de la controversia, estoy en posición de analizar cómo debe resolverse la misma, en correcta práctica adjudicativa.

En consideración a los argumentos de las partes, se resumen las normas jurídicas, máximas y doctrinas aplicables a los errores imputados.

## II.

## A.

En nuestra jurisdicción, es norma reiterada que la industria de seguros está revestida del más alto interés público. ***Jiménez López et al. v. SIMED***, 180 DPR 1, 8 (2010); ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 901 (1994). En varias ocasiones, el Tribunal Supremo de Puerto Rico ha reconocido que el alto interés público se debe al rol que ocupa en la protección de los riesgos que amenazan la vida o el patrimonio de la ciudadanía y la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad. ***Serrano Picón v. Multinational Life Ins.***,

---

[22] *Íd.*, Anejo XVIII, págs. 247-252.
[23] Archivada y notificada en autos el 13 de octubre de 2023. *Íd.*, Anejo XIX, págs. 253-260.

2023 TSPR 118, 212 DPR __ (2023); ***Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company***, 204 DPR 1010, 1019 (2020); ***R.J. Reynolds v. Vega Otero***, 197 DPR 699, 706 (2017) (citando a ***Natal Cruz v. Santiago Negrón et al.***, 188 DPR 564, 575 (2013)). Por ello, la industria de seguros está altamente regulada por la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el "Código de Seguros de Puerto Rico".[24]

Por otra parte, nuestro Tribunal Supremo ha reiterado que los seguros juegan un papel económico vital tanto a nivel individual como en el ámbito comercial, ya que permite a las personas y a los negocios, proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima. ***Maderas Tratadas v. Sun Alliance Ins. Co***., 185 DPR 880, 896, 897 (2012).

El Código de Seguros define el contrato de seguros como "aquel por el que una persona se obliga a indemnizar a otra si se produce un suceso incierto previsto". Art. 1.020 del Código de Seguros.[25] En ese contexto, constituye un acuerdo donde una parte se compromete a compensar a otra por una pérdida ocasionada a causa de una contingencia en particular. ***Savary et al. v. Mun. Fajardo et al.***, 198 DPR 1014, 1023 (2017). Es decir, a cambio del pago de una prima, se transfiere el riesgo de un evento específico a la aseguradora, quien viene obligada a cubrir los daños económicos por los que el asegurado esté llamado a responder. Íd; ***Viruet et al. v. SLG Casiano-Reyes***, 194 DPR 271, 278 (2015). Conforme lo anterior, la función primordial de una póliza de seguro es establecer un mecanismo para transferir un riesgo y de esta manera proteger al asegurado de ciertos eventos identificados en el contrato de seguro. Íd.; ***R.J. Reynolds v. Vega Otero,*** supra, pág. 707. Es por ello que, la asunción de un riesgo de pérdida y el compromiso de

---

[24] 26 LPRA sec. 101 *et seq.*
[25] 26 LPRA sec. 102.a.

asegurar contra dicha pérdida son requisitos esenciales de un contrato de seguro. ***Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Licencia de Armas de Puerto Rico, Inc.***, 202 DPR 842 (2019).

Otra de las características esenciales de las pólizas de seguro es la obligación de indemnizar. Íd. "Indemnizar se define como la acción de resarcir de un daño o perjuicio". Íd. Véase I. Rivera García, *Diccionario de términos jurídicos*, 3ra ed.*,* San Juan, Lexis Publishing, 2000, pág. 125.

La póliza configura el documento escrito donde se plasman los términos que rigen el contrato de seguro. ***Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company***, supra; ***R.J. Reynolds v. Vega Otero***, supra, pág. 707. Véase, además, el Art. 11.140 del Código de Seguros, 26 LPRA sec. 1114(1). En otras palabras, los términos acordados entre la parte asegurada y la aseguradora están contenidos en la póliza. ***Maderas Tratadas v. Sun Alliance Ins. Co***., supra, pág. 897. Por lo tanto, las cláusulas contenidas en la póliza constituyen la ley entre las partes. Íd.

**B.**

Siendo la industria de seguros una materia revestida de alto interés público, el Código de Seguros establece la forma en que se interpretarán los contratos de seguros. ***Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company***, supra. Este dispone que las cláusulas contenidas en una póliza se interpretarán globalmente. Íd. A saber, a base del conjunto total de sus términos y condiciones, según expuestos en la póliza y conforme a como se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherida a la póliza y que forme parte de esta. Íd.; ***Echandi Otero v. Stewart Title***, supra, pág. 369. Véase, además, el Art.

11.250 del Código de Seguros.[26] "En consecuencia, corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical". *Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company*, supra. Véanse, además, *Jiménez López et al. v. Simed*, 180 DPR 1 (2010); *S.L.G. Francis-Acevedo v. SIMED*, supra; *Echandi Otero v. Stewart Title*, supra. Asimismo, las cláusulas del contrato de seguros deberán examinarse desde "la óptica de una persona normal de inteligencia promedio". *Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company*, supra; *S.L.G. Ortiz-Alvarado v. Great American*, 182 DPR 48 (2011). "Sin embargo, si de la póliza se desprende un significado particular para determinado término, este se aplicará a tenor con lo convenido por las partes". *SLG Francis-Acevedo v. SIMED*, *supra*, pág. 387. De esa forma, podemos asegurarnos de que quien adquiere la póliza reconoce cuál es el alcance de la misma. *Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company*, supra, pág. 1020.

Cabe resaltar que, en la interpretación de los contratos de seguro, las normas generales del Código Civil "aplicarán sólo de manera supletoria". *Echandi Otero v. Stewart Title*, supra, pág. 369. Véase, además, *Banco de la Vivienda v. Underwriters*, 111 DPR 1 (1981); *Molina Texidor v. Centro Recreativo Plaza Acuática*, 166 DPR 260 (2005); Artículos 1233 a 1241 del Código Civil de 1930, según enmendado (Código Civil).[27]

Además, no podemos perder de perspectiva que un contrato de seguro es un contrato de adhesión, debido a que la aseguradora es la parte que dicta los términos y las condiciones expuestas en la póliza. *SLG Francis-Acevedo v. SIMED*, supra, pág. 386; *Maderas*

---

[26] 26 LPRA sec. 1125.
[27] 31 LPRA secs. 3471-3479.

*Tratadas v. Sun Alliance et al.*, supra, pág. 899. Por lo tanto, los contratos de seguros deben interpretarse liberalmente en beneficio del asegurado. *Monteagudo Pérez v. ELA.*, 172 DPR 12, 21 (2007). Es decir, toda ambigüedad debe interpretarse <u>a favor del asegurado</u>, por vía de una interpretación razonable. *Serrano Picón v. Multinational Life Ins.*, supra; *SLG Francis-Acevedo v. SIMED*, supra, pág. 386; *Echandi Otero v. Stewart Title*, supra. De ese modo, se cumple con el designio intrínseco de la póliza, que es dar protección a la parte asegurada. *Rivera Matos, et al v. Triple-S Propiedad, Inc. y ACE Insurance Company*, supra, pág. 1021.

Ahora bien, cuando los términos de un contrato de seguro son claros, específicos y no dan lugar a ambigüedades o a distintas interpretaciones, se hará valer la voluntad de las partes. Íd.; *Quiñones López v. Manzano*, 141 DPR 139, 155-156 (1996); *Molina Texidor v. Centro Recreativo Plaza Acuática*, supra. Véase, además, el Art. 1233 del Código Civil, 31 LPRA sec. 3471.

### C.

En materia de seguros, es necesario considerar si la póliza contiene cláusulas de exclusión para cernir los riesgos cubiertos por la aseguradora. *SLG Francis-Acevedo v. SIMED*, supra, pág. 388. Las cláusulas de exclusión limitan la cubierta de protección y, como consecuencia, disponen las circunstancias en las que la aseguradora no responderá por determinados eventos, riesgos o peligros. Íd.; *Serrano Picón v. Multinational Life Ins.*, supra; *Rivera Matos et al. v. Triple-S et al.*, supra, pág. 1021; *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 279 (2015); *Jiménez López et al. v. SIMED*, 180 DPR 1, 11 (2010); *Echandi Otero v. Stewart Title*, supra. Por ello, las cláusulas de exclusión deben interpretarse restrictivamente para que la aseguradora cumpla su propósito de proveer protección al asegurado. Íd.; *Marín v. American Int' l. Ins. Co. of PR*, 137 DPR 356, 362. Así, cualquier

ambigüedad en una cláusula de exclusión <u>debe resolverse a favor del asegurado.</u> Íd. Sin embargo, cuando los términos, las condiciones y las exclusiones contenidas en la póliza son claras, deben interpretarse literalmente, a tenor con la voluntad de las partes. Íd.; *Jiménez López et al. v. SIMED*, supra; *Quiñones López v. Manzano Posas*, supra, pág. 156. En tal eventualidad, la aseguradora no está obligada a cubrir los riesgos expresamente excluidos, aun cuando otras cláusulas de la póliza parezcan inferir lo contrario. *Marín v. American Int' l. Ins. Co. of PR*, supra; *Quiñones v. Manzano Posas*, supra.

**D.**

Respecto a la exclusión de servicio profesional, en ausencia de una definición de dicho término en la póliza, se empleará su acepción legal. *Rivera Matos et al. v. Triple-S et al.*, supra, pág. 1022; *Viruet et al. v. SLG Casiano-Reyes*, supra, pág. 280. Es decir, "en materia de seguros, se ha resuelto que un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o destreza especializada. Asimismo, las habilidades que requiere un servicio profesional son predominantemente intelectuales o mentales, no físicas o manuales". Íd. No obstante, el hecho de que el término servicio profesional no esté expresamente definido en una póliza no hace que la exclusión sea ambigua. M. J. O' Leary *et al.*, *Directors & Officers Liability Insurance Deskbook*, 4ta ed., Chicago: American Bar Association, 2016, pág. 177.

En nuestra jurisdicción se adoptó el enfoque de parte integral o acción asociada con la prestación de un servicio profesional. Esto es, "hay acciones que, aunque no requieren de conocimientos especializados, por constituir parte integral del proceso de brindar servicios profesionales, les aplica esta exclusión". *Rivera Matos et al. v. Triple-S et al.*, supra, pág. 1023. Además, "en ocasiones, las

tareas ordinarias también pueden calificarse como servicios profesionales si son esenciales a las gestiones de un profesional". Íd., págs. 1023-1024. Así, las lesiones o los daños resultantes de acciones tomadas durante la prestación de un servicio profesional se han considerado excluidas de cobertura. M. J. O' Leary *et al.*, *op. cit.* Para aplicar este enfoque, se requiere examinar la naturaleza de la conducta imputada. *Rivera Matos et al. v. Triple-S et al.*, supra, pág. 1024.

**III.**

Como cuestión de umbral, no podemos eludir que un contrato de seguro es un contrato de adhesión. *SLG Francis-Acevedo v. SIMED*, supra, pág. 386; *Maderas Tratadas v. Sun Alliance et al.*, supra, pág. 899. Por consiguiente, cualquier ambigüedad debe interpretarse en favor de la parte asegurada.

La mayoría del Panel resuelve que las exclusiones contenidas en la póliza son claras y deben interpretarse literalmente. Por lo que, a su entender, el reclamo de los esposos Suárez-Benítez por la súbita muerte de su hija está excluido de cubierta. Lo anterior debido a que están excluidas las reclamaciones por lesión corporal, enfermedad o muerte de alguna persona. No obstante, a mi respetuoso entender, existen controversias de hechos relacionadas con el contrato de seguro emitido por AIG, debido a que la póliza de seguro contiene cláusulas imprecisas. De un minucioso estudio de la póliza en cuestión, surgen legítimas interrogantes sobre la exclusión de cobertura en cuanto a (1) si la póliza excluyó únicamente los daños físicos o si se extiende a los daños emocionales que reclama la parte demandante, por no especificarse. Asimismo, surgen interrogantes respecto a qué acciones por muertes quedaron excluidas, si la acción de sufrimientos de la señora Suárez Benítez, que se transmiten por herencia, o la acción propiamente de los familiares por los daños, sufrimientos y

angustias mentales ante la muerte de su familiar. Esto incide directamente en establecer la intención de AIG y del Hogar al adquirirse la cobertura contra la corporación, a su vez, en determinar si AIG provee cubierta por el reclamo contra el Hogar.

Adviértase que, la exclusión no es clara ni puede interpretarse literalmente. En virtud de la ambigüedad inherente a la redacción de la póliza en cuestión, considero que el TPI actuó correctamente. En efecto, existen controversias de hechos esenciales que impiden resolver el pleito sumariamente, en esta etapa de los procedimientos.

Ante la necesidad de dilucidar estas discrepancias interpretativas, resulta imperativo que el foro primario considere la presentación de prueba pertinente que aclare la verdadera naturaleza de las cláusulas cuestionadas en la póliza, así como el trato que se le ha dado en casos idénticos o similares ante planteamientos análogos. Además, estas cláusulas imprecisas están contenidas en un contrato de adhesión. Por lo cual, su interpretación debe ser liberalmente a favor de la parte asegurada. ***Monteagudo, Pérez v. ELA***, supra, pág. 21.

De acuerdo con todo lo anterior y contrario a la opinión mayoritaria, entiendo prudente no intervenir con el criterio del foro recurrido, en esta etapa de los procedimientos.

**IV.**

Tras un análisis objetivo, sereno y cuidadoso de los principios de hermenéutica que rigen la interpretación de las cláusulas de los contratos de seguro, la póliza en cuestión y el estudio pormenorizado de la jurisprudencia sobre el particular, entiendo respetuosamente, que en correcta práctica adjudicativa apelativa, corresponde denegar la consideración de este asunto. Por ello, disiento del curso de acción tomado por la mayoría en este caso.

A mi entender, este pleito no cumple con los criterios que rigen a esta Curia para intervenir, en esta etapa de los procedimientos. La determinación del foro primario es, en esencia, correcta en derecho. Por lo tanto, no hubiese expedido el auto. Considero que existen razones de peso para que el proceso ante el foro primario continúe su curso, de forma tal que el TPI llegue a una conclusión sobre la posible responsabilidad de la aseguradora y su extensión, según las controversias que aún están pendientes de adjudicación.

Por los fundamentos expuestos, disiento de la decisión mayoritaria.

Ángel R. Pagán Ocasio
Juez de Apelaciones